JOHNSON and husband, Plaintiffs and Respondents, v. HEINTZ and another, Defendants and Third-Party Plaintiffs and Appellants: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Third-Party Defendant and Respondent.

*No. 219. Argued October 29, 1973.—Decided December 21, 1973.*
(Also reported in 213 N. W. 2d 85.)

For the appellants there were briefs, and a response brief to the separate appeal of the third-party respondent, by *Wickhem, Consigny, Sedor, Andrews & Hemming, S. C.,* of Janesville, and oral argument by *Richard E. Hemming.*

For the respondents there was a brief by *Grimm & Elliott* and *Robert J. Elliott,* all of Janesville, and oral argument by *Robert J. Elliott.*

For the third-party respondent there was a brief by *Noll, Donovan, Bolgrien & Ruth* of Beloit, and oral argument by *William F. Donovan.*

HEFFERNAN, J. The appellants, Gladys Heintz and American Family Mutual Insurance Company, contend that the trial court erred when it instructed the jury that, on the basis of the evidence, it could determine whether the injury occasioned by Emaline Johnson on August 12, 1969, when she fell while hanging out the clothes, was

the natural result of the injury sustained in the automobile accident and permitted an award of additional compensation to be included in the damages attributable to the automobile accident.

Those appellants contend that it was improper for the jury to be allowed to consider these injuries unless there was testimony to a reasonable degree of medical probability that the fall was occasioned by the automobile accident. They contend that there was no such evidence to a reasonable degree of medical probability produced at trial. There is, however, an abundance of testimony by Emaline Johnson which could inferentially lead to a causal connection between the knee injury in the automobile accident and the reinjury in the fall.

We conclude, however, that expert testimony is required in a situation where there is an attempt to show that a subsequent reinjury was occasioned by a prior event. In *Cramer v. Theda Clark Memorial Hospital* (1969), 45 Wis. 2d 147, 150, 172 N. W. 2d 427, we said:

"This court has long distinguished between matters of common knowledge and those needing expert testimony to explain and has held that expert testimony should be adduced concerning matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience."

The same principle was applied in *Globe Steel Tubes Co. v. Industrial Comm.* (1947), 251 Wis. 495, 29 N. W. 2d 510, a case posing a problem similar to the instant one. Therein, the compensation claimant revealed a history of industrial accident which caused a severe injury to the left leg. At some subsequent time, his leg doubled up and he sustained an additional injury. There was medical testimony that, prior to the fall in that case, there was a permanent disability as a result of the first accident; but the expert could not testify with any degree

of medical certainty that the disability sustained in the first injury was the cause of the second one. The court stated:

"Where we are dealing . . . with a subject matter which is not within common knowledge, there must be some basis in medical testimony for an award." (P. 497)

In accordance with these principles, we conclude that Emaline Johnson was required to show by expert medical testimony to a reasonable degree of medical probability that the fall on August 12, 1969, was the result of a disability caused by the prior automobile accident. That evidence does not appear of record. Dr. Odland, her orthopedic surgeon, the only medical expert who testified in any respect on matters directed to the cause of the fall on August 12, 1969, stated:

"The patient continues to have pain in the kneecap area and some buckling feelings in the knee which are related to as post-operative feature of this type of injury she had and the type of surgery she required. The patient has built her muscles strong to try and protect against the buckling feeling and it's my impression that she has permanent disability as a result of the cartilage injury to the kneecap and to the fact that she does not have a cartilage now in the knee."

An examination of the transcript in which that statement appears reveals that the question was addressed to the nature of the permanent injury she had at the time of trial and is not probative of her condition between the time of the surgery occasioned as a result of the automobile accident and the fall on August 12, 1969. Dr. Odland was also asked what complaints Emaline Johnson would have. The question was clearly addressed to the matter of permanent injury extending into the future after the time of trial. In response to the question of defendant's counsel, "State whether or not she can expect the knee to buckle in this condition," Dr. Odland an-

swered, "If the kneecap is sore and is painful the knee will buckle, yes, it will buckle occasionally." While these questions and answers are relevant to the question of permanent disability, they do not satisfy the plaintiffs' burden of proof to a reasonable degree of medical probability that the fall on August 12, 1969, was occasioned by the prior tortious trauma.

In addition, Dr. Odland's deposition of December, 1971, was introduced into evidence. Therein he stated that it was unlikely that the plaintiff's twisting of her knee in August, 1969, was related to the previous condition of the knee and that it appeared to him that the fall in 1969 was an independent reinjury of the knee. He said he did not believe the knee injury in August, 1969, was related to the 1964 accident.

A review of the entire medical evidence reveals no testimony from which it can be concluded that any medical expert testified to a reasonable degree of medical probability that the fall of 1969 was occasioned by the injuries received in the automobile accident. On the contrary, Dr. Odland's deposition, which was before the jury, reveals that he could not conclude that there was any causal relationship between the original injuries and the injuries received in the fall.

In the absence of proper expert testimony, it was error to submit to the jury a question which permitted it to include in its assessment of damages a sum for the injuries which the plaintiff received in August, 1969.

It is argued, however, on appeal by the attorneys for Emaline Johnson that there was not a timely objection to this instruction and that, even though the instruction was erroneous, it cannot be asserted now. This is ordinarily the rule. However, the very case upon which Emaline Johnson's attorneys rely (*Menge v. State Farm Mut. Automobile Ins. Co.* (1969), 41 Wis. 2d 578, 164 N. W. 2d 495) contains an exception to the rule which was made

applicable there and is equally applicable here. In *Menge,* the objection to the emergency instruction was not raised until appeal. The court pointed out that there was error in giving the emergency instruction when the facts in evidence did not warrant it. This we held to be a "misstatement of the law." (P. 586) In the instant case, the instruction which would have permitted recovery for the August, 1969, damages was predicated on the trial judge's belief that the evidence presented was of sufficient quality for the jury to conclude, without the necessity of speculation, that the injuries sustained in the fall were properly compensable in the automobile accident damage suit.

Our conclusion that the instruction was based on an error of law is demonstrated by the judge's statement on the denial of the defendants' motions after verdict. Therein he stated:

"The instruction on subsequent injury was given on the basis that plaintiff testified that her injured knee gave way and she fell. The doctor expressed no opinion one way or another on the subject."

It is thus apparent that the trial judge believed that the lay opinion of the plaintiff alone was sufficient to show the causal connection between the two injuries. This is not the law. Expert testimony to a reasonable degree of medical probability was required. The instruction was erroneous and prejudicial and, as a misstatement of the law, objection to it can be raised even after the verdict has been returned.

The plaintiffs, as pointed out above, have argued that the evidence was sufficient to show that the fall of 1969 was the result of the automobile accident. They also argue that the determination of whether the fall was related to the accident of November, 1964, should not result in upsetting the jury verdict for future pain and

suffering and for future loss of wages to the extent they were attributable to the accident of 1964. This contention is correct. As the instructions were given to the jury, it was entitled, however, to consider that any further injuries sustained in the fall were the natural result of the injuries received in the automobile accident. The figure of $30,000 for personal injuries and $5,000 for loss of society and medical care may, therefore, reflect the jury's inclusion of damages that were attributable solely to the fall and not to the accident. Accordingly, although we consider the damages not excessive, in the frame of reference the jury was permitted to view them, they were improperly determined. Under the present state of the record, we cannot determine what portion of the damage award was included as a result of the fall. As a consequence, the jury's finding of damages must be reversed *in toto*.

The defendants, Gladys Heintz and her insurer, American Family Mutual Automobile Insurance Company, also claim that it was error for the trial judge to have permitted counsel for the plaintiffs to present a chart in tabular form detailing the claimed loss of wages, month by month, from the 1964 accident through 1969 following the fall. To the extent that there was evidence associating the claimed wage loss to the automobile accident of 1964, these wage losses were relevant and were admissible into evidence. We see nothing wrong with the use of the chart for the purpose of avoiding jury confusion. In *Affett v. Milwaukee & Suburban Transport Corp.* (1960), 11 Wis. 2d 604, 106 N. W. 2d 274, we held that it was not error to use a blackboard to assist the jury in understanding an argument, provided that the figures or the material demonstrated therein were in evidence. The author of that opinion succinctly stated, "What the ear may hear, the eye may see." (P. 614) In *Fischer v. Fischer* (1966), 31 Wis. 2d 293, 304, 305, 142

N. W. 2d 857, we stated, ". . . we see nothing wrong with the practice of having counsel prepare tabulations and computations of matters in evidence." From a review of the entire record we are satisfied that the days for which the loss of wages was claimed was founded on the testimony of the personnel supervisor of the Oaks Manufacturing Company, the employer of Emaline Johnson.

It is also contended by the defendants that the attorney for the plaintiffs represented these wage losses as undisputed, while in fact they were in substantial controversy. Our review of the entire evidence indicates that when the attorney for the plaintiffs presented the chart and initially represented it as showing undisputed wage losses, an objection was promptly made. Thereafter, the contention that they were undisputed was abandoned, and the attorney for the defendants pointed out in the course of oral argument that the facts and figures were disputed.

We see no error in the use of the tabulations to the extent that they represented a recapitulation of the plaintiffs' evidence as it had already been developed in the record. While it was error for the plaintiffs' attorney to contend that the facts represented therein were undisputed when they were not, that error was corrected through the vigilance of the defense counsel and no prejudice resulted.

The defendants, Gladys Heintz and her insurance company, also object to the manner in which the jury apportioned the negligence. Upon the original return of the verdict, that trial judge was obliged to resubmit it to the jury because the dissents to the verdict were patterned in such a manner that there was not a uniform five-sixths verdict as required by sec. 270.25 (1), Stats. When this error was corrected and the verdict returned a second time, the trial judge was again obliged to reject it because the jury had apportioned 80 percent of the

negligence to Gladys Heintz and 15 percent to Elizabeth Thomas. The jury was directed that the negligence must be apportioned on the basis of a total negligence of 100 percent. Three minutes later a verdict in proper form was returned apportioning 85 percent of the negligence to Gladys Heintz and 15 percent to Elizabeth Thomas. Counsel for the defendants contends that, because the jury took only three minutes to assign these new figures, the jury arbitrarily adjusted its figures rather than making the apportionment on a proper deliberative basis as, the defendants contend, is required in the interest of justice. While under some circumstances, evidence of arbitrariness, rather than deliberate action, by a jury may require a reversal in the interest of justice, that situation is not apparent in the instant case. It is reasonable to assume that the error was one of arithmetic only or that the jury had originally deliberated carefully and come to the conclusion that the negligence of Elizabeth Thomas did not exceed 15 percent. In either case, only a mathematical correction appears to have been necessary. There is nothing to indicate, nor has it been argued, that a jury giving greater time to the return of its verdict would not have reached a similar conclusion in view of the evidence.

Elizabeth Thomas testified that she was forced to turn left into the Bruhn car to avoid hitting a woman whom she saw standing in the road. Counsel representing her insurer, State Farm Mutual Automobile Insurance Company, claims that, under these circumstances, she should have been relieved of liability as a matter of law because she was confronted with an emergency not of her own making. The trial judge, however, properly refused to invoke the emergency doctrine as a matter of law and instructed the jury that it could, if the facts warranted, find that Elizabeth Thomas was confronted

with an emergency.[1] The evidence revealed a dispute in the facts, in that Erna Fitzmaurice, whose car was stalled on the edge of the road to Elizabeth Thomas' right, a short distance from the stalled Bruhn and Heintz cars, testified that a vehicle which the jury could have believed was driven by Elizabeth Thomas came through the blizzard, pinned her up against the side of her car, stopped, backed up, and proceeded on. Under these circumstances, the jury could have believed that the emergency with which Elizabeth Thomas was confronted was of her own making. Under this state of the facts, the trial judge properly refused to invoke the emergency doctrine as a matter of law to relieve Elizabeth Thomas of liability.

We are also satisfied that there was sufficient evidence for the jury's finding that Elizabeth Thomas' negligence was a cause of injuries sustained by Emaline Johnson. The burden of proof to show the negligence of Elizabeth Thomas was upon Gladys Heintz and the American Family Mutual Insurance Company, as third-party plaintiffs. The evidence produced shows that the burden of proof was sustained. The negligence of Elizabeth Thomas is not seriously questioned, aside from the issue of whether she was entitled to the emergency doctrine as a matter of law.

---

[1] The trial court gave this instruction on emergency:

"You are instructed that drivers of motor vehicles who are suddenly confronted by an emergency not brought about or controlled by their own negligence and who are compelled to act instantly to avoid collision or injury are not guilty of negligence if they make such a choice of action or inaction as an ordinarily prudent person might make if placed in the same position, even though it should afterwards appear not to have been the best or safest course. You will bear in mind, however, that the rule just stated does not apply to any person whose negligence wholly or in part created the emergency. One is not entitled to the benefit of the emergency rule unless he is without fault in the creation of the emergency. This instruction is applicable only with regard to your consideration of negligence as to management and control and not to any other item of negligence."

The principal argument of Elizabeth Thomas' insurer is that there was insufficient proof to show that the injuries sustained by Emaline Johnson were occasioned in any part by the impact resulting from the collision with the Bruhn car. There is no doubt that injuries were sustained in the first impact. In addition, Emaline Johnson testified in respect to her pain and discomfort after the second collision. She stated, when asked if she noted any change in pain and discomfort after the second collision, "Yes, the pain was terrific." She also said to another passenger immediately after the accident that the second impact was worse than the first. There was also evidence to show that the second impact caused more damage to the Heintz car than did the first. The Heintz vehicle was moved back a car length by the second impact.

In response to hypothetical questions, Dr. Odland gave different answers in respect to whether the second impact contributed to the personal injuries. In response to a hypothetical question posed by counsel for the defendant, Gladys Heintz, he responded, "I would state that both [impacts] would have to be, on that hypothetical question, responsible for the injury." In response to a hypothetical question posed by the attorney for State Farm Mutual Automobile Insurance Company, Dr. Odland responded, "On that I would have to state that the first impact would have to be the one to account for at least the pain and discomfort and probably the injury." Both of these hypothetical questions were based upon facts in evidence, and both were responsive to the questions posed. The jury could rely on either of these answers depending upon which facts in evidence it chose to place reliance. There was sufficient evidence on either point of view to permit the jury to reach a conclusion, and the conclusion they reached—that Emaline Johnson received injuries in the second accident—is supported by

sufficient evidence to sustain the apportionment of causal negligence.

State Farm Mutual Automobile Insurance Company argues that, even if Elizabeth Thomas were causally negligent, it cannot be held liable for contribution toward plaintiffs' damages. It argues that Elizabeth Thomas and Gladys Heintz were not joint tort-feasors but were successive tort-feasors. State Farm's principal contention, that successive tort-feasors are not subject to contribution, even though the injuries sustained are apparently indivisible, is correct.

The criteria for contribution in negligence cases was stated in *Farmers Mut. Automobile Ins. Co. v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. 2d 512, 515, 99 N. W. 2d 746:

"1. Both parties must be joint negligent wrongdoers; 2. they must have common liability because of such negligence to the same person; 3. one such party must have borne an unequal proportion of the common burden."

In *Butzow v. Wausau Memorial Hospital* (1971), 51 Wis. 2d 281, 288, 289, 187 N. W. 2d 349, this court pointed out that "to establish joint liability the independent torts must concur in point of time to thereafter inflict a single injury." As State Farm Mutual Automobile Insurance Company views this case, the tortious conduct of Gladys Heintz occurred some twenty minutes prior to any possible tortious conduct of Elizabeth Thomas—that the torts did not occur in point of time and, therefore, no contribution is available. We do not so view the facts of this case.

In our view the negligence of Gladys Heintz is predicated upon the fact that her negligent failure to drive properly under the circumstances carried with it potential liability for any foreseeable consequences unless limited by the legal concepts of proximate cause. We think that it was clearly foreseeable, under the reasonable man

standard, that driving under these blizzard circumstances would not only be likely to result in collisions with objects on the highway, but also that such negligence might well result in stalling the vehicle upon the highway and exposing the passengers of the vehicle to the hazards attendant upon being in a stalled vehicle in a blizzard upon the roadway. That is exactly what happened here.

The defendant, Gladys Heintz, had a duty to exercise ordinary care to not expose her passengers, or anyone else for that matter, to the foreseeable consequences of her negligence. Her negligence made her liable for all the foreseeable consequences that flowed therefrom, either immediately or thereafter, unless that liability was interrupted by an intervening cause or by considerations of proximate cause. It also could be reasonably concluded, although we do not find it necessary to go to that point in this case, that Gladys Heintz committed a new act of negligence when she left her trapped passenger in the vehicle without attempting any measures to prevent a subsequent collision. Whether this matter is viewed as a continuing chain from the time of the negligent driving or as a new act of negligence in abandoning the pinned passenger, Gladys Heintz's negligence was operative at the time of the second impact. The negligence continued and was operative at such time as the host vehicle was subsequently struck by the other vehicle. Such negligence concurs in point of time with the tortious conduct of the operator of a vehicle who thereafter negligently strikes the stalled automobile.

To the extent that Elizabeth Thomas' negligence contributed to the accident (the second impact) causing injuries, there is joint liability and contribution is required.

The acts of negligence by Gladys Heintz and by Elizabeth Thomas each were proximate causes of the injuries

sustained in the second impact. The negligence of Elizabeth Thomas, however, was not a cause of the injuries sustained in the first impact.

Proximate cause does not present a difficult question under these circumstances. The negligence of Gladys Heintz was a substantial factor in causing the second impact, as was the negligence of Elizabeth Thomas. It cannot be said that the negligence of Elizabeth Thomas was an intervening cause. It was rather a cause that arose out of negligence which concurred in time with the still operative negligence of Gladys Heintz.

The trial judge concluded that contribution was appropriate. That conclusion, however, was based on precedents that have been overruled by this court. His instruction was patterned after Wis J I—Civil, Part II, 1721 concerning damages arising from indivisible injuries from nonconcurrent or successive torts. This instruction is in error under the facts, because the torts in the instant case in part were concurrent. Moreover, that instruction is based on *Heims v. Hanke* (1958), 5 Wis. 2d 465, 93 N. W. 2d 455, and *Bolick v. Gallagher* (1955), 268 Wis. 421, 67 N. W. 2d 860. Those cases were predicated on the theory that a jury would find it impossible to allocate responsibility for what we have heretofore termed as indivisible injuries and that therefore contribution was appropriate for the full injury in respect to the negligence of consecutive tort-feasors whose conduct produced an indivisible injury. The language of those cases was withdrawn by this court in *Butzow v. Wausau Memorial Hospital* (1971), 51 Wis. 2d 281, 290, 187 N. W. 2d 349. In *Butzow,* we rejected the idea that liabilities of tort-feasors should be determined on the grounds that the injuries are indivisible. We said:

"We see no more difficulty in allocating damages to the respective negligence of two tort-feasors than we do

in allocating the contribution of negligence to two tort-feasors to the injury and damages." (P. 290)

Accordingly, in this case it was incumbent for the jury, under proper instructions by the court, to determine the extent of the injuries sustained in the first impact, and for those injuries Gladys Heintz alone would be answerable in damages. The jury was also required to determine the injuries sustained in the second collision. In respect to those injuries, Gladys Heintz and Elizabeth Thomas were joint tort-feasors, and for those damages each tort-feasor was answerable to the plaintiffs. Contribution is appropriate, as in this case, when one tort-feasor is obliged to assume a disproportionate share of the burden to answer in damages. The burden of contribution is apportioned on the basis of the comparative negligence of the tort-feasors. *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 6, 114 N. W. 2d 105.

Inasmuch as the instruction given by the trial judge concerning damages from indivisible injuries was based upon a rule of law that we have heretofore withdrawn, we conclude that the entire cause of action must be retried. The jury was permitted to conclude that each tort-feasor was responsible for the total injuries which the plaintiff sustained in the successive impacts. In our view the jury should have been instructed that Elizabeth Thomas was answerable in damages only for those injuries sustained in the second impact, and it is only in respect to those injuries that contribution would be appropriate between the tort-feasors.

*By the Court.*—Judgment reversed; cause remanded for a new trial.