Jeffrey L. Voigt, Sr., Diane M. Voigt, Jeffrey Voigt Jr., Scott E. Voigt and Cory R. Voigt, Plaintiffs,

v.

Robert J. Riesterer, Defendant,

American Standard Insurance Company of Wisconsin, a member of the American Family Insurance Group, Madison, Wisconsin, Defendants-Appellants,†

Todd J. Brockman, Defendant-Respondent.

Court of Appeals

*No. 94–0612. Submitted on briefs August 22, 1994.—Decided September 13, 1994.*

(Also reported in 523 N.W.2d 133.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Robert P. Wuebben* of Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas J. Janssen* and *Mary Katherine Clarke* of *Sigman, Janssen, Stack, Wenning & Sutter* of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   American Standard Insurance Company of Wisconsin, a member of the American Family Insurance Group (American Standard) appeals a judgment requiring American Standard to indemnify its insured, Todd Brockman, for the personal payment of $40,000 made to the plaintiff, Jeffrey Voigt, in

exchange for a release of liability involving an automobile accident.

## BACKGROUND

The accident in question involved a multi-vehicle collision on County Highway S in Outagamie County in December 1990. Traveling east, plaintiff Jeffrey Voigt was operating a pickup truck owned by Jeff Mavis, who was in the passenger seat. Brockman, with Kevin Baumgartner as a passenger, was operating a car in a westerly direction. Brockman's automobile crossed the centerline of Highway S and collided head-on with the pickup truck driven by Voigt. Within a few minutes, a vehicle driven by Dion Haase was traveling in a westerly direction and came upon the Voigt-Brockman accident. Haase parked his vehicle on the north shoulder of the highway across from the two vehicles. Three to five minutes after the first collision, a second collision occurred when Robert Riesterer, also traveling in a westerly direction, struck the back end of Brockman's automobile, which propelled Brockman into Voigt again. Riesterer then bounced off the back of Brockman's automobile and struck the parked Haase vehicle.

Both Brockman and Riesterer were operating their vehicles with blood alcohol levels in excess of the legal limit. As a result of the first collision between Brockman and Voigt, Brockman was rendered unconscious, thus he was incapacitated from further operation of his vehicle. Voigt was seriously injured and Baumgartner was killed. The parties agreed that Voigt sustained injuries in both impacts.

Brockman's automobile was insured by American Standard under a policy with bodily injury liability limits of $100,000 each person and $300,000 each

occurrence.[1] Voigt presented a claim to American Standard and Brockman. Prior to litigation, American Standard offered the policy limit of $100,000 to Voigt in exchange for a complete release of Brockman. Voigt rejected this offer, demanding an additional personal contribution from Brockman. Voigt then filed an initial summons and complaint naming only Riesterer as the defendant. Voigt amended the complaint stating a claim against Brockman and American Standard for compensatory and punitive damages. American Standard answered the amended complaint for itself, but declined to defend Brockman because of the "defense termination clause" in the insurance policy. Eventually, American Standard and Voigt settled for the $100,000 policy limit. Brockman settled with Voigt for an additional personal payment of $40,000. Both American Standard and Brockman settled in return for complete releases of liability. Riesterer also settled

---

[1] Brockman's insurance policy reads in part:

**LIMITS OF LIABILITY**

The limits of liability shown in the declarations apply, subject to the following:

1.   The **bodily injury** liability limit for "each person" is the maximum for all damages sustained by all persons as the results of **bodily injury** to one person in any one occurrence.

2.   Subject to the **bodily injury** liability limit for "each person" the **bodily injury** liability limit for "each occurrence" is the maximum for **bodily injury** substained [sic] by two or more persons in any one occurrence.

. . . .

We will pay no more than these maximums no matter how many vehicles are described in the declarations or **insured persons,** claims, claimants, policies or vehicles are involved. (Emphasis in original.)

463

with Voigt. Thus, Voigt has exhausted all avenues of compensation and is not a party to this appeal.

Brockman filed a cross-claim against American Standard for contribution (indemnity) alleging that the accident constituted two occurrences, thereby increasing the policy limit. Consequently, Brockman argued that American Standard should indemnify him for the $40,000 personal settlement with Voigt. American Standard brought a motion for summary judgment asserting that the accident was a single occurrence and therefore the maximum liability of American Standard was $100,000. The trial court denied the summary judgment and a bench trial ensued. American Standard filed a motion for reconsideration of this issue, which the trial court considered at the end of the testimony and consequently denied.

In its decision after trial, the court found that the accident was a two-occurrence case. The trial court determined the following causal negligence breakdown: (1) In the first impact, Brockman was 100% causally negligent and Voigt was 0% negligent; and (2) in the second impact, Brockman was 10% causally negligent, Riesterer was 90% causally negligent and Voigt was 0% negligent.

Thus, the question of whether there were one or two occurrences is at issue. If there were two occurrences, American Standard's exposure to Voigt is $100,000 per occurrence with a total exposure of $200,000. Consequently, American Standard would have to reimburse Brockman for the personal settlement of $40,000 paid to Voigt. Second, American Standard contends that the trial court erred by finding Brockman negligent in the second occurrence because a separate, unrelated act of negligence committed by Brockman was required.

## DISCUSSION

The first issue is whether there were two occurrences within the meaning of Brockman's insurance policy. "Construction of a contract involves a question of fact only where its words are ambiguous and require construction by reference to extrinsic facts." *Welter v. Singer,* 126 Wis. 2d 242, 248, 376 N.W.2d 84, 86 (Ct. App. 1985). The term occurrence is at issue, which has been held to be unambiguous by the Wisconsin Supreme Court. *Olsen v. Moore,* 56 Wis. 2d 340, 351, 202 N.W.2d 236, 241 (1972). Interpreting unambiguous terms within an insurance contract is a question of law, thus we owe no deference to the trial court's determination. *Welter,* 126 Wis. 2d at 249, 376 N.W.2d at 86. Furthermore, language in an insurance contract must be given its ordinary lay meaning. *Kremers Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984).

American Standard argues that the trial court erred by finding that the accident in question was a two-occurrence case. We disagree. The trial court's finding that the automobile accident was a two-occurrence case is consistent with leading Wisconsin case law addressing the definition of "occurrence" within the context of automobile insurance policies.

In *Olsen,* the supreme court addressed the issue of whether the terms "accident" or "occurrence" in liability insurance policies should be viewed from the perspective of cause or effect. *Id.* at 349, 202 N.W.2d at 240. In *Olsen,* the insured was driving east on an interstate highway when his car crossed the median strip, entered the westbound lane and hit two oncoming vehicles. The accident involved several vehicles, and the five cases that resulted were consolidated. *Id.*

at 343-44, 202 N.W.2d at 237. The *Olsen* court articulates:

> If viewed from the point of view of a cause, it would appear that a single, uninterrupted cause which results in a number of injuries or separate instances of property damage is yet one "accident" or "occurrence." *If, however, that cause is interrupted or replaced by another cause the chain of causation is broken and more than one accident or occurrence has taken place.*

*Id.* at 349, 202 N.W.2d at 240 (emphasis added). The supreme court concluded that there was only one insurable "occurrence." The court based its conclusion in part on the fact that: "There was virtually no time or space interval between the two impacts." *Id.* at 350, 202 N.W.2d at 241.

In another prominent Wisconsin case discussing the definition of "occurrence," we concluded there was one occurrence where the tortfeasor's car struck a bicyclist, momentarily stopped, drove through an intersection dragging the bicyclist, reversed gear and backed up the car in an attempt to free the bicyclist. *Welter,* 126 Wis. 2d at 246, 376 N.W.2d at 85. We articulated: "If cause and result are so simultaneous or so closely linked in time and space as to be considered by the average person as one event, courts adopting the 'cause' analysis uniformly find a single occurrence or accident." *Id.* at 251, 376 N.W.2d at 87. Thus, we concluded that by applying the ordinary meaning and the *Olsen* cause theory to these facts, the first impact with the bicyclist was a predominant, active and continuing cause, and therefore only one occurrence. *Welter,* 126 Wis. 2d at 252-53, 376 N.W.2d at 87-88.

466

Applying the facts of the Brockman-Voigt impact and the Brockman-Voigt-Riesterer impact to the definition of occurrence set forth above, we conclude that there were two occurrences within the meaning of the insurance policy. First, there was the collision when Brockman crossed the centerline and struck Voigt. Then there was a time interval of three to five minutes before the next impact occurred. The cause of the first impact was interrupted such that the cause and result were not simultaneous or so closely linked in time and space to be considered one event by the average person. Thus, by applying the ordinary meaning, the first impact and second impact were two separate occurrences.

The second issue American Standard raises is that the trial court erred in finding Brockman 10% causally negligent in the second occurrence. The standard of review for this issue involves the trial court's apportionment of negligence. The apportionment of negligence is a matter left to the trier of fact and where more than one reasonable inference can be drawn from the evidence, we accept the inference drawn by the trier of fact. *Brain v. Mann,* 129 Wis. 2d 447, 452, 385 N.W.2d 227, 230 (Ct. App. 1986) (citations omitted). Appellate courts will sustain the apportionment of negligence unless the trial court's determination is clearly erroneous. Section 805.17(2), STATS.

American Standard argues that Brockman could not be negligent in the second impact under the finding that the incident was two occurrences. They argue that if Brockman asserts there were two occurrences, he must identify a new, unrelated act of negligence for the second impact. We disagree with this analysis. Brock-

467

man's original negligence in the first impact was continuing in nature. Thus, it was possible for his negligence to concur with that of Riesterer in the second impact, making them jointly and severally liable to Voigt.

The companion cases *Johnson v. Heintz,* 61 Wis. 2d 585, 213 N.W.2d 85 (1973) [hereinafter *Johnson I*], and *Johnson v. Heintz,* 73 Wis. 2d 286, 243 N.W.2d 815 (1976) [hereinafter *Johnson II*], are the leading authority in the area of continuing negligence and involved a multi-vehicle collision as well. The first collision occurred when a westbound vehicle was struck from the rear. This first car crossed the centerline of the highway and ended up in a ditch. The second car remained on the shoulder of the westbound lane. A second collision occurred shortly thereafter when another westbound car was rear-ended. A third collision occurred when another westbound car, driven by Heintz, collided with a vehicle from the second collision. A passenger in the third collision, Johnson, refused to leave the car due to her injuries. A fourth collision occurred when an eastbound car struck a car from the second collision, pushing it into the Heintz automobile. *Johnson II,* 73 Wis. 2d at 289-90, 243 N.W.2d at 820. One of the issues was whether Heintz could be found negligent in both the third and fourth collisions.

The supreme court concluded that Heintz was negligent in both collisions. In explaining its rationale, the court asserted:

> If the acts concurred in time but resulted in distinguishable separate injuries to the same subject, there are separate torts rather than joint liability. The situation here sufficiently partakes of a succes-

sive tort as a natural and probable consequence of the original negligence such that the originally negligent actors are wholly liable for the resulting harm by the secondary participants, but additionally their duty and breach concurs in a point of time with that of the successive actor, thus also raising joint liability and contribution. The second impact and therefore its injurious consequences are the product of the concurring negligence.

*Id.* at 302-03, 243 N.W.2d at 826 (citations omitted). Thus, it is possible for a trier of fact to find a tortfeasor responsible for an initial tort as well as liable for concurring negligence in the commission of a subsequent tort. The *Johnson I* court explained Heintz's "negligence made her liable for all the foreseeable consequences that flowed therefrom, either immediately or thereafter, unless that liability was interrupted by an intervening cause or by considerations of proximate cause." *Johnson I,* 61 Wis. 2d at 601, 213 N.W.2d at 93.

Applying these rationales to the two collisions, we conclude that Brockman was negligent in both occurrences. Brockman's initial negligence in striking Voigt was such that the second impact precipitated by Riesterer was a natural and probable consequence of his original negligence. Although Brockman was unconscious when the second impact occurred, being rearended by Riesterer was a natural and probable consequence of the initial collision and subsequent location of Brockman's vehicle. Thus, his actions constituted continuing negligence.

If a third person intervenes, the causal connection is not automatically severed. At times a subsequent act

469

may supersede the first actor's negligence, thus becoming a superseding cause relieving the first actor from liability. *Stewart v. Wulf,* 85 Wis. 2d 461, 475-76, 271 N.W.2d 79, 86 (1978). Wisconsin courts have adopted the rules of intervening and superseding cause as set forth by the RESTATEMENT (SECOND) OF TORTS § 447 (1965).[2] The Restatement delineates when an intervening act is not a superseding cause. *Stewart,* 85 Wis. 2d at 476-77, 271 N.W.2d at 86. The third prong of the test articulates that an intervening act is not superseding if it is a normal consequence of the situation and is not done in a manner that is extraordinarily negligent. Furthermore, the supreme court has concluded that the acts of drivers of successive striking vehicles are not considered superseding acts. *Johnson II,* 73 Wis. 2d at 302, 243 N.W.2d at 826 (citing *Wenzel v. Werch,* 256 Wis.47, 39 N.W.2d 721 (1949)).

We conclude that Riesterer's actions did not cut off Brockman's liability. Even though Riesterer's actions intervened, Brockman's causal connection was not severed. Riesterer's actions were a normal and foreseeable consequence. He was traveling in the same direction as

---

[2] RESTATEMENT (SECOND) OF TORTS § 447 (1965) states:

Negligence of Intervening Acts
   The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
   (a)   the actor at the time of his negligent conduct should have realized that a third person might so act, or
   (b)   a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
   (c)   the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

Brockman, came upon the accident and struck the back of Brockman's vehicle propelling the car into Voigt. His act was not so extraordinary or unforeseeable as to supersede Brockman's actions, cutting off his negligence.

Because there was sufficient evidence supporting Brockman's causal negligence in the second impact, the trial court's determination is not clearly erroneous. Determining the number of occurrences is not contingent upon finding two separate acts of negligence. Brockman's initial act constituted continuing negligence into the second impact; therefore, the trial court appropriately found him causally negligent in the second impact.

*By the Court.*—Judgment affirmed.