Tricia L. Cefalu, Plaintiff,

v.

Continental Western Insurance
Company and Carl M. Wojnowski,
Defendants-Third-Party Plaintiffs-Appellants,†

v.

William F. Theys, Star Line Trucking Corporation
and Continental Casualty Company,
Third-Party Defendants-Respondents.

Court of Appeals

*No. 2004AP2369. Submitted on briefs May 25, 2005.
—Decided July 6, 2005.*

2005 WI App 187

(Also reported in 703 N.W.2d 743.)

† Petition to review denied 10-3-05.

On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *Emile H. Banks, Jr.* and *Vicki L. Arrowood* of *Emile Banks & Associates, LLC*, Milwaukee.

On behalf of the third-party defendants-respondents, the cause was submitted on the brief of

*Kim M. Peterson* of *Eiche & Frakes, S.C.,* Milwaukee, and *Geri A. Wilkinson* of *Law Offices of Mark H. Miller,* Brookfield.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J.   The sole issue in this case is whether William F. Theys, who overturned his truck while driving on a highway in the city of Muskego, should be held liable for injuries Tricia L. Cefalu sustained as a result of her subsequent collision with Carl M. Wojnowski at a nearby intersection. Wojnowski and Continental Western Insurance Company submit that the circuit court erred in determining, as a matter of law, that Theys' rollover accident was not a cause-in-fact of Cefalu's injuries and that public policy considerations militate against imposing liability on Theys.

¶ 2.   We conclude that Theys' rollover accident was not a substantial factor in bringing about, and therefore not a cause-in-fact of, Cefalu's injuries. We reach this conclusion because there does not exist an unbroken sequence of events connecting the two accidents. We further determine that public policy considerations preclude the imposition of liability on Theys:   Cefalu's injuries are simply too remote from Theys' alleged negligence and allowance of recovery in this case would know no just or sensible stopping point. Accordingly, we affirm the circuit court's grant of summary judgment in favor of the third-party defendants.

### Background

¶ 3.   On July 12, 1999, Theys was operating a truck loaded with limestone near the controlled intersection of Highways 36 and 45 in the City of Muskego. As Theys was headed westbound on Highway 36, he

attempted to negotiate a left turn onto southbound Highway 45 but his truck overturned and spilled its load of limestone. The truck and its contents were located south of the intersection with Highway 36.

¶ 4. The police and other emergency personnel arrived at the scene immediately after the truck overturned. The officers took precautions to control the intersection. The officers put up flares, closed the left-turn lane from westbound Highway 36 to southbound Highway 45, closed southbound Highway 45 near the accident scene to traffic, positioned emergency vehicles so as to prevent any additional collision with the overturned truck, placed a uniformed officer to direct traffic at the intersection of Highways 36 and 45, and called for additional assistance. By approximately 4:00 p.m., there were an estimated four uniformed officers and between ten and twenty fire department personnel present at the scene.

¶ 5. Wojnowski, the fire chief for the Tess Corners Volunteer Fire Department, was notified of the rollover accident. He proceeded in a fire truck southbound on Highway 45 to assist in cleaning up the spill at the scene. At around 4:00 p.m., approximately thirty minutes after the rollover accident, Wojnowski approached the intersection of Highways 36 and 45 with the truck's sirens and rotating lights activated. As he reached the intersection, he noticed a uniformed officer directing traffic at the intersection and deactivated his sirens, slowed his vehicle and waited for the officer to wave him into the intersection. The traffic light at that time for southbound Highway 45, the direction Wojnowski was headed, was red. The traffic light for eastbound and westbound Highway 36 was green.

¶ 6. The traffic control officer directed traffic on Highway 36 to stop. After the officer thought traffic had

stopped, he motioned Wojnowski to proceed into the intersection. As Wojnowski entered the intersection, Cefalu, who was headed eastbound on Highway 36, entered the intersection as well. The line of vision between the two vehicles was apparently blocked by a garbage truck stopped in the left-hand eastbound lane of Highway 36. Although Cefalu had already traveled through the intersection once and was aware of the accident and the presence of emergency personnel and equipment, she did not know that the vehicles were still at the scene. In any event, as the two proceeded through the intersection, Wojnowski's vehicle struck the driver's side of Cefalu's vehicle.

¶ 7.  In October 2001, Cefalu filed a complaint sounding in negligence against Wojnowski and Continental Western—the insurer of Tess Corners Volunteer Fire Department.[1] Subsequently, Wojnowski and Continental Western (collectively, "Wojnowski") filed a third-party complaint against Theys, Star Line Trucking Corporation (Theys' employer) and Continental Casualty Company (Star Line Trucking's insurer). Wojnowski alleged that Theys' negligence in overturning his vehicle and spilling its load of limestone caused the accident leading to Cefalu's injuries. Thus, Wojnowski sought contribution or indemnification from Theys, Star Line Trucking and Continental Casualty (collectively, "Theys").

¶ 8.  Theys filed a motion for summary judgment. He argued that his negligence was not a cause-in-fact of Cefalu's injuries because "the sequence of events follow-

---

[1] The complaint also named the police officer directing traffic at the intersection, the police department's insurer, and the State of Wisconsin, Department of Health and Social Services. These parties, however, were later dismissed.

ing the Theys accident and leading to the Cefalu accident were not unbroken" and therefore his alleged negligence was not "actively operating" at the time of the accident. He further maintained that two public policy factors prevented the imposition of liability on him: (1) Cefalu's injuries were too remote from his alleged negligence and (2) allowance of recovery would "enter a field that has no sensible or just stopping point." *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979). The circuit court agreed with Theys and granted summary judgment in his favor.

### *Standard of Review*

¶ 9. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995). Whether negligence was a cause-in-fact of an injury is a factual question for the jury if reasonable people could differ on the issue, and the question only becomes one of law for judicial decision if reasonable people could not disagree. *Morgan*, 87 Wis. 2d at 735–36. Whether public policy precludes the imposition of liability is a question of law solely for judicial determination. *Fandrey v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 6, 272 Wis. 2d 46, 680 N.W.2d 345. Before determining whether public policy considerations preclude liability, it is usually a better practice to submit the case to the jury. *Gritzner v. Michael R.*, 2000 WI 68, ¶ 26, 235 Wis. 2d 781, 611 N.W.2d 906. However, when the facts are not complex and the relevant public policy questions

have been fully presented, this court may determine whether public policy precludes liability before trial. *Id.*

## *Discussion*

¶ 10. Wojnowski contends the circuit court erred in holding that, as a matter of law, Theys' rollover accident was not a substantial factor in producing, and therefore not a cause-in-fact of, Cefalu's injuries. Wojnowski submits that reasonable people could reach different conclusions as to whether there was an "unbroken sequence of events," *see Fondell v. Lucky Stores, Inc.*, 85 Wis. 2d 220, 227, 270 N.W.2d 205 (1978), between Theys' rollover accident and the collision and therefore the matter should have been submitted to the jury. Wojnowski also claims the circuit court erred in holding that public policy considerations militated against imposing liability on Theys because the injury was too remote from his alleged negligence and allowance of recovery would enter a field that has no sensible or just stopping point.

¶ 11. The test of cause-in-fact is whether the negligence was a "substantial factor" in producing the injury. *Fandrey*, 272 Wis. 2d 46, ¶ 12 (citation omitted). "The phrase, 'substantial factor,' denotes that the conduct has such an effect in producing the injury as to lead a reasonable person to regard it as a cause, using that word in the popular sense. There may be several substantial factors in any given case." *Toeller v. Mutual Serv. Cas. Ins. Co.*, 115 Wis. 2d 631, 637, 340 N.W.2d 923 (Ct. App. 1983) (citation omitted). To prove that a tortfeasor's negligence was a substantial factor in pro-

ducing a plaintiff's injuries, it must be shown that there was an "unbroken sequence of events" where the negligence of the tortfeasor was actively operating at the time of the accident which produced the plaintiff's injury. *Fondell*, 85 Wis. 2d at 227.

¶ 12.  After the determination of the cause-in-fact of an injury, a court still may deny recovery after addressing public policy considerations. *Morden v. Continental AG*, 2000 WI 51, ¶ 60, 235 Wis. 2d 325, 611 N.W.2d 659. The public policy considerations that a court applies to decide if it should preclude liability are:  (1) the injury is too remote from the negligence, (2) the injury is too wholly out of proportion to the tortfeasor's culpability, (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm, (4) allowing recovery would place too unreasonable a burden on the tortfeasor, (5) allowing recovery would be too likely to open the way for fraudulent claims, or (6) allowing recovery would enter a field that has no sensible or just stopping point. *Mohr v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 5, ¶ 46, 269 Wis. 2d 302, 674 N.W.2d 576, *review denied,* 2004 WI 50, 271 Wis. 2d 109, 679 N.W.2d 544 (No. 02–1782). These considerations are addressed on a case-by-case basis.

¶ 13.  Wojnowski favorably compares this case to the companion cases *Johnson v. Heintz*, 61 Wis. 2d 585, 213 N.W.2d 85 (1973) [hereinafter *Johnson I*], and *Johnson v. Heintz*, 73 Wis. 2d 286, 243 N.W.2d 815 (1976) [hereinafter *Johnson II*], and to *Voigt v. Riesterer*, 187 Wis. 2d 459, 523 N.W.2d 133 (Ct. App. 1994), which are the leading authorities in the area of continuing negligence in multi-vehicle collisions. In *Johnson I* and *Johnson II*, the first collision occurred when a

westbound vehicle was struck from the rear. *Johnson II*, 73 Wis. 2d at 289. This first car crossed the center-line of the highway and lodged into the embankment of a ditch. *Id.* The second car remained on the shoulder of the westbound lane. *Id.* A second collision occurred shortly thereafter when another westbound car was rear-ended. *Id.* A third collision occurred several minutes later when yet another westbound car, driven by Heintz, collided with a vehicle from the second collision. *Id.* at 289–90. A passenger in the third collision, Johnson, refused to leave the car due to her injuries. *Id.* at 290. A fourth collision occurred when an eastbound car struck a car from the second collision, pushing it into the Heintz automobile. *Id.* at 291. One of the issues was whether Heintz could be found negligent in both the third and the fourth collisions. *Id.* at 303–04; *Johnson I*, 61 Wis. 2d at 600–02.

¶ 14. In *Voigt*, Brockman's vehicle collided with Voight's vehicle in a head-on collision. *Voigt*, 187 Wis. 2d at 462. Almost immediately thereafter, Haase came upon the accident scene, stopped his car on the opposite side of the road and came over to assist. *Id.* Less than five minutes after this first collision, Riesterer's vehicle collided with Brockman's vehicle, causing a chain reaction collision resulting in damages to Voigt's and Haase's vehicles. *Id.* The issue was whether Brockman's initial negligence constituted continuing negligence into the second impact. *See id.* at 471.

¶ 15. As Wojnowski points out, in each of the multi-vehicle cases, the court concluded that the defendant's negligence in causing the initial impact at issue was still substantially operative at the time of the subsequent impact and therefore the defendant was causally negligent in the later impact. *See Johnson I*, 61 Wis. 2d at 601; *Johnson II*, 73 Wis. 2d at 304–05; *Voigt*,

187 Wis. 2d at 469–71. Thus, these cases teach us that the negligence of persons in an initial accident may expose them to liability for damages resulting from subsequent impacts. *See Johnson I*, 61 Wis. 2d at 600–02; *Johnson II*, 73 Wis. 2d at 302; *Voigt*, 187 Wis. 2d at 469–470. However, these cases further instruct that there may be situations where the subsequent impacts occur without the negligence of the original actors being a substantial factor or where the original actors' negligence may be excused by the intervention of later participants or other considerations. *See Johnson I*, 61 Wis. 2d at 600–01; *Johnson II*, 73 Wis. 2d at 302; *Voigt*, 187 Wis. 2d at 469. This case presents one such situation.

¶ 16.    Our substantial factor analysis is best conducted by highlighting the factual distinctions between the circumstances surrounding the two accidents in this case and the circumstances surrounding the accidents in *Johnson I, Johnson II* and *Voigt*. First, in all three of the multi-vehicle collision cases, the subsequent accident occurred when another vehicle physically collided with the scene of the earlier accident. Here, there was a physical separation between the two accidents. The Cefalu-Wojnowski accident took place at the intersection of Highways 36 and 45. The overturned truck and its spilled load, while visible from the intersection, were not in the intersection. Second, in *Johnson I, Johnson II* and *Voigt*, the initial and subsequent collisions were slightly closer in time than the two accidents in this case. The Cefalu-Wojnowski accident took place nearly thirty minutes after Theys' rollover accident.

¶ 17.    Third, in the three previous cases, the subsequent accident occurred before the accident scene had been secured by emergency personnel. Here, during the

thirty minutes between accidents, emergency personnel from various departments arrived at the accident scene. The officers secured the scene with flares and squad cars, closed Highway 45 to traffic and placed a police officer to direct traffic at the intersection of Highways 36 and 45. These steps taken to secure the area substantially decreased the likelihood of another collision with the overturned truck. Thus, despite Wojnowski's protestations that emergency personnel and their equipment created commotion and chaos, their presence actually made the scene safer than it was immediately following the accident.

¶ 18.   Finally, in the other chain reaction accident cases, the drivers involved in the subsequent accidents were not aware of the other accident until moments before impact. Here, Cefalu had already traveled through the intersection of Highways 36 and 45. She was aware that an accident had taken place and emergency personnel were previously at the scene, but apparently did not slow down sufficiently or see the officer directing traffic. Wojnowski observed the traffic control officer, slowed down, deactivated his sirens and proceeded into the intersection only after being directed to do so by the officer.

¶ 19.   These factors that are present in this case, but which were not present in the other multi-vehicle cases, clearly break the sequence of events connecting Theys' rollover accident to the Cefalu-Wojnowski collision. Thus, unlike the drivers in *Johnson I, Johnson II* and *Voigt,* Theys' negligence was not actively operating by the time of the Cefalu-Wojnowski collision and was not a substantial factor in producing the damages Cefalu sustained as a result of the collision. This is the only reasonable conclusion that can be drawn from the facts presented. Accordingly, we conclude the circuit

court properly ruled, as a matter of law, that Theys' rollover accident was not a cause-in-fact of the Cefalu-Wojnowski collision and Cefalu's resulting injuries.[2]

¶ 20.   Even were Theys' negligence a cause-in-fact of the Cefalu-Wojnowski accident, we would still refuse to impose liability on Theys on grounds of public policy because Cefalu's injuries were too remote from Theys' alleged negligence and allowance of recovery would enter into a field that has no sensible or just stopping point. The public policy factor, "whether the injury is too remote from the negligence," is a restatement of the old chain of causation test. Kendall W. Harrison, *Wisconsin's Approach to Proximate Cause,* 73 Wisconsin Lawyer 20, 55 (Feb. 2000); *see also Fandrey,* 272 Wis. 2d 46, ¶ 15 n.12 (citing the Harrison article). It is not much different than the substantial factor test used to determine cause-in-fact. Harrison, *supra,* at 55. Thus,

---

[2] Wojnowski also points us to *Morgan v. Pennsylvania General Insurance Co.,* 87 Wis. 2d 723, 275 N.W.2d 660 (1979), and *Toeller v. Mutual Service Casualty Insurance Co.,* 115 Wis. 2d 631, 340 N.W.2d 923 (Ct. App. 1983). In both cases, the courts refused to hold, as a matter of law, that a tortfeasor's conduct was not a substantial factor in producing the plaintiff's injuries. *See Morgan,* 87 Wis. 2d at 736; *Toeller,* 115 Wis. 2d at 637. These cases, however, are readily distinguished from the matter at hand. First, unlike this case, neither of the cases are successive car accident cases. As a result, Wojnowski's conclusory factual comparisons are strained at best. Further, both *Morgan* and *Toeller* generally stand for the legal proposition that where reasonable people could come to different conclusions in answering the cause-in-fact inquiry, the issue must be submitted to the jury. *See Morgan,* 87 Wis. 2d at 735–36; *Toeller,* 15 Wis. 2d at 636–37. We do not quarrel with this principle; however, as explained above, it simply does not apply to this case.

779

there will be few cases in which it makes sense to say that a defendant's negligence has been a substantial factor in the plaintiff's injury but is too removed from that injury to allow recovery. *Id.*

¶ 21. The remoteness factor revives the intervening or superseding cause doctrine, which had passed away with the adoption of the substantial factor test of cause-in-fact. *Id.*; *see also Fandrey*, 272 Wis. 2d 46, ¶ 15 n.12. A finding that a defendant's negligence is too remote from the injury is essentially just a determination that a superseding cause should relieve the defendant of liability. Harrison, *supra,* at 55; *see also Fandrey*, 272 Wis. 2d 46, ¶ 15 n.12. An intervening act is not superseding if it is a normal consequence of the situation and is not done in a manner that is extraordinarily negligent. *Voigt*, 187 Wis. 2d at 470.

¶ 22. Wojnowski argues that it was foreseeable that "Theys' act of overturning and spilling his truck would have necessitated the assistance of emergency vehicles and personnel, which congested the intersection . . . . When traffic is being directed in a traffic-light controlled intersection filled with this type of commotion, it is reasonably foreseeable that a collision could occur." While it may have been foreseeable that Theys' act of overturning his truck and spilling his load of limestone would have necessitated the assistance of emergency vehicles and personnel, we cannot agree that it was a normal consequence of the intervention of emergency personnel for other drivers to then become involved in an accident at a nearby intersection.

¶ 23. As we have explained, the actions of the police and other emergency personnel made the accident scene safer and more secure: a police officer was directing traffic at the nearby intersection and squad

cars and flares prevented traffic from entering Highway 45 south where the truck and its load were located. These efforts minimized any hazard that may have existed as a result of Theys' rollover accident. Indeed, the traffic control officer testified that nothing further could have been done to control the intersection. Thus, it was not a normal consequence of the emergency response for (1) another driver who was aware of the accident and the presence of emergency personnel to allegedly fail to slow down sufficiently as she approached the controlled intersection and to fail to yield to both the traffic control officer and the emergency vehicle, which had its lights activated; (2) the driver of the emergency vehicle that was proceeding into that intersection to fail to yield to another vehicle; and (3) a police officer directing traffic to motion an emergency vehicle into the intersection without making certain the intersection was clear. The emergency response to the situation and the conduct relating to that response therefore acted as superseding causes breaking the chain of causation from Theys' rollover accident to the Cefalu-Wojnowski collision.

¶ 24. Furthermore, as the list of public policy factors reflects, "we trace the consequences of one's negligent acts, not indefinitely, but to a certain point." *See Conroy v. Marquette Univ.*, 220 Wis. 2d 81, 90, 582 N.W.2d 126 (Ct. App. 1998) (citation omitted). We have reached that point here. Emergency personnel are called to most accident scenes. If we accept Wojnowski's position, then every tortfeasor who causes an initial accident is liable for damages resulting from a second accident even after emergency personnel respond and secure the area. This becomes apparent when we consider the hypotheticals Wojnowski and the insurers set forth in their briefs: Would a "rubbernecker" who

collides with a vehicle in front of him or her while viewing the original accident have a claim against the tortfeasor who caused the original accident? Would a pedestrian who crosses the street on a "don't walk" sign because he or she is watching emergency personnel and is hit by a car have a claim against the tortfeasor who caused the original accident? As these hypotheticals demonstrate, if liability attaches in this case, we would have no clear or obvious guideposts for the cessation of liability. We would inappropriately enter a field that has no just or sensible stopping point.

### *Conclusion*

¶ 25.  In sum, Theys' rollover accident was not a substantial factor in producing, and therefore not a cause-in-fact of, Cefalu's injuries. Furthermore, public policy considerations preclude the imposition of liability on Theys:  Cefalu's injuries were too remote from Theys' alleged negligence and allowance of recovery would enter a field that knows no just or sensible stopping point.

*By the Court.*—Judgment affirmed.