Michael Kɪᴅᴅ and Julie Kidd,
Plaintiffs-Appellants,

v.

John E. Aʟʟᴀᴡᴀʏ and Geico Indemnity Company,
Defendants-Respondents.

Court of Appeals

*No. 2011AP50. Submitted on briefs October 7, 2011.
—Decided November 16, 2011.*

2011 WI App 161

(Also reported in 807 N.W.2d 700.)

129

130

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Chad A. Lanning* of *Lanning Law Offices, LLC,* West Bend and *Daniel P. Patrykus* of *Keberle & Patrykus, LLP,* West Bend.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Emile H. Banks, Jr.* and *Patti J. Kurth* of *Emile Banks & Associates, LLC,* Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Neal Nettesheim, Reserve Judge.

¶ 1. NEUBAUER, P.J. Michael Kidd and Julie Kidd appeal from a circuit court order dismissing on public policy grounds their complaint against John E. Allaway

and his insurer, Geico Indemnity Company. The Kidds' daughter, Krista, was in a motor vehicle accident and was killed on impact. Krista's body was ejected from the vehicle, landed in the roadway, and was struck twice by passing motorists, the second of whom was Allaway. The Kidds brought this action against Allaway and Geico alleging negligent mutilation of a corpse and seeking damages for emotional and physical injury resulting from their inability to view Krista's body following the accident or to have an open casket at her funeral. Given the facts of this case, Allaway's liability for the alleged emotional and physical harm to Michael and Julie Kidd is too remote, the injury too disproportionate to Allaway's negligence and the burden on Allaway—if he were to defend against such a claim—too unreasonable. Thus, we likewise conclude that it would be contrary to public policy to permit the action to proceed. We affirm.

## BACKGROUND

¶ 2. The facts, as alleged in the Kidds' complaint, are as follows.[1] On February 9, 2008, at approximately 1:00 a.m., eighteen-year-old Krista was a front-seat passenger in a Honda traveling westbound on Highway 60 in Ozaukee county. The weather conditions were poor. Visibility was limited by blowing snow, and the roads were extremely slippery. The driver of the vehicle lost control and began drifting into the oncoming lane of eastbound traffic. The vehicle was struck by a Dodge pickup truck and both cars went into a spin. Both

---

[1] Because this case arises on a motion to dismiss for failure to state a claim, we must accept as true all facts alleged in the complaint and all reasonable inferences from those facts. *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 320, 565 N.W.2d 94 (1997).

vehicles were destroyed. Krista was ejected from the vehicle and was killed immediately, suffering an atlanto-occipital dislocation on impact. Krista's body came to rest partially in the eastbound lane of traffic.

¶ 3. Shortly thereafter, another vehicle entered the accident site. Upon doing so, it began running over items in the roadway. The driver of that vehicle braked, lost control of her vehicle, and heard bumping noises underneath her vehicle. The vehicle had struck Krista's body and had moved it approximately ten feet eastward. The Kidds allege that this vehicle's impact with Krista's body was not a substantial factor in the mutilation of Krista's body. The vehicle came to rest off the roadway; the driver exited the vehicle and came to the accident site to offer assistance.

¶ 4. Shortly thereafter, Allaway approached the scene. Allaway was traveling approximately fifty-five miles per hour just prior to entering the accident site. As he approached, the headlights of four stalled vehicles and roadway debris were visible. Allaway's passenger observed what appeared to be a sack of clothing in the roadway. Allaway drove over the object at a high rate of speed. Allaway's passenger informed him that she had seen "legs" and Allaway responded that he had hit a deer. The passenger pleaded with Allaway, insisting that he had not hit a deer. Allaway continued through the accident scene, refusing his passenger's demands that he stop the vehicle. Allaway finally did stop his vehicle but fled the scene after unsuccessfully trying to persuade his passenger to leave with him, and prior to the arrival of emergency personnel. The Kidds allege that Allaway dragged Krista's body approximately forty feet eastward. Allaway later admitted to drinking beer prior to picking up his passenger. Further, the lead investigator dispatched to the scene drove no faster

than thirty-five miles per hour enroute given the then-existing road and weather conditions.

¶ 5. Following the accident, Krista's body was transported to the Office of the Ozaukee County Coroner in Port Washington. At approximately 2:00 a.m., local law enforcement officers arrived at the Kidds' home in West Bend to inform them that Krista had been killed. The officers instructed the Kidds to go to the coroner's office to visually identify their deceased daughter. The Kidds, who arrived at the coroner's office at 3:30 a.m., were preparing for and expecting to see their deceased daughter and, specifically, say good-bye. Instead, the Kidds were informed that they would not be allowed to see their daughter due to the severity of her injuries. The Kidds verbally identified their daughter based on information regarding the location and shape of a birthmark. The Kidds were also informed by the director of the funeral home that, given Krista's injuries, he would be unable to prepare her for viewing at the funeral. The Kidds asked again to see their daughter, but the funeral director refused because of the severity of mutilation to Krista's remains.

¶ 6. The Kidds filed this action against Allaway in August 2009. The Kidds alleged that Allaway's negligence in proceeding through the accident site at a rate of speed greater than was reasonable and prudent under then-existing road conditions was a proximate cause of the mutilation of Krista's body. The Kidds alleged that Allaway's negligent mutilation of Krista's body prevented them from saying good-bye to their daughter and from entombing her with respect and dignity and, as a result, caused severe and nontransitory emotional and concomitant physical injury. Specifically, the Kidds allege Allaway's negligence caused Julie emotional injury that is long-standing in duration and

134

of significant consequence to her quality of life—manifesting itself in long-standing throat problems, extended loss of weight, continuing nausea, continuing digestive and other injuries. Similarly, Michael alleges Allaway's negligence has caused daily fatigue, sleep issues, headaches, significant ongoing weight loss and other injuries. The Kidds allege that the severe emotional and medical injuries to the Kidds caused by Allaway's negligence can be distinguished from injuries typically expected to follow the traumatic loss of a child.

¶ 7. Allaway requested dismissal, arguing that the Kidds had failed to state a claim for which relief can be granted. Following a hearing and additional briefing, the circuit court issued a written decision granting Allaway's motion to dismiss on public policy grounds. The Kidds appeal.

## DISCUSSION

■

¶ 8. We assume for purposes of this appeal that Allaway's actions were negligent and that there was in fact an emotional and physical injury to the Kidds. However, the imposition of liability does not always flow from a finding of negligence and cause-in-fact. *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 540–41, 247 N.W.2d 132 (1976). "The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of public policy." *Id.* at 541 (quoting *Hass v. Chicago & N. W. Ry. Co.*, 48 Wis. 2d 321, 326, 179 N.W.2d 885 (1970)).

■

¶ 9. Recently in *Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, ¶ 49, 313 Wis. 2d 294, 752 N.W.2d 862, the supreme court reiterated the six public

135

policy grounds upon which Wisconsin courts may deny liability even in the face of proven or assumed negligence:

> (1) "the injury is too remote from the negligence"; (2) the recovery is "wholly out of proportion to the culpability of the negligent tort-feasor"; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery "would place too unreasonable a burden" on the negligent tort-feasor; (5) recovery would be "too likely to open the way to fraudulent claims"; and (6) recovery would enter into "a field that has no sensible or just stopping point."

(Citation omitted.) *See also Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 655, 517 N.W.2d 432 (1994). A court may refuse to impose liability on the basis of any of these factors without full resolution of a cause of action by trial. *Hornback*, 313 Wis. 2d 294, ¶ 49.

¶ 10. Whether it was proper for the circuit court to use public policy considerations to limit liability before all the facts had been presented in a negligence determination is a question of law subject to independent appellate review. *See Gritzner v. Michael R.*, 2000 WI 68, ¶¶ 26–27, 235 Wis. 2d 781, 611 N.W.2d 906. Nevertheless, we benefit from the thoughtful and thorough analysis of the circuit court.

¶ 11. We begin by acknowledging that in most cases the better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability. *Alvarado v. Sersch*, 2003 WI 55, ¶ 18, 262 Wis. 2d 74, 662 N.W.2d 350. However, in cases where the facts are simple to ascertain and the

136

public policy questions have been fully presented, a court may review public policy and preclude liability before trial. *Id.*

¶ 12. Here, Allaway argued from the outset that public policy required the dismissal of the Kidds' complaint. The circuit court allowed the Kidds' attorney to submit additional briefing to respond in detail to those public policy arguments; the Kidds did so and the circuit court expressly considered the Kidds' response. Thus, the public policy questions were fully presented to the circuit court. In addressing those questions in its written decision, the circuit court recognized, as do we, that there is case law justifying a cause of action for negligent mutilation of a body.[2] *See Scarpaci v. Milwaukee Cnty.*, 96 Wis. 2d 663, 672, 292 N.W.2d 816 (1980) (noting the legal right of the family to entomb a deceased's remains in their integrity and without mutilation and recognizing that next of kin have a claim against one who wrongfully mutilates or otherwise disturbs a corpse); *see also Koerber v. Patek*, 123 Wis. 453, 102 N.W.40 (1905).

¶ 13. In dismissing the Kidds' complaint, the circuit court set forth its reasoning as follows:

> The Court indicated at the time of [the motion] hearing that the cause of action set forth in the [Kidds'] complaint does not simply deal with the negligence of Mr. Allaway in running over an object in the roadway that turned out to be a body, but the fact that his doing

---

[2] However, the court noted that Wisconsin case law does not address the cause of action in the context of an automobile accident. Because the court decided this case on public policy grounds, it did not address the issue further and neither do we. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

so resulted in mutilation of that body and caused specifically alleged emotional and physical damages to the [Kidds]. The Court's concern as expressed at the . . . hearing was the remoteness of those damages from the actions of Mr. Allaway and the fact the injuries alleged may be wholly out of proportion to the culpability of the negligent tortfeasor.

In looking at the six [public policy] factors discussed in the *Bowen* case, this Court believes that the physical and emotional damages alleged by the [Kidds] as a result of Mr. Allaway's actions are simply too remote from his alleged negligence. The Court also believes that the injuries claimed by the [Kidds] are wholly out of proportion to the culpability of Mr. Allaway given the facts of this accident as alleged in the [Kidds'] complaint. It appears to this Court in retrospect that given that the death of Krista was wholly unrelated to the negligence of [Allaway], it appears too extraordinary that the negligence of [Allaway] would have brought about the harm to the [Kidds] as alleged. Additionally, the Court is concerned that allowing this type of claim may open the door to claims of this type in any vehicular homicide case where the deceased's body ends up "mutilated" as a consequence of the accident causing death.

Based on the Court's concerns of the public policy factors discussed in *Bowen*, this Court finds as a matter of law that public policy requires dismissal of the [Kidds'] complaint.

Based on our review of the complaint and consideration of the arguments in light of the case law governing public policy, we agree. While we have considered each of the public policy factors, our decision focuses primarily on the first, second and fourth factors—namely, the remoteness of the Kidds' injuries from Allaway's negligence, the culpability to Allaway vis-à–vis the Kidds' injuries, and whether the allowance of recovery would place an unrea-

138

sonable burden on Allaway. We begin with whether the Kidds' injuries are too remote from Allaway's negligence.

¶ 14. Whether the injury is too "remote" from Allaway's alleged negligence "is a restatement of the old chain of causation test." *Cefalu v. Continental W. Ins. Co.*, 2005 WI App 187, ¶ 20, 285 Wis. 2d 766, 703 N.W.2d 743. As used in the public policy analysis, the remoteness inquiry "revives the intervening or superseding cause doctrine, which had passed away with the adoption of the substantial factor test of cause-in-fact." *Id.*, ¶ 21. A determination that the injury is too removed or separated from the negligence is "essentially just a determination that a superseding cause should relieve the defendant of liability." *Id.*; *see also Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 762, 501 N.W.2d 788 (1993). Thus, in considering the time, place or sequence of events, we consider whether "the chain of causation was direct and unbroken." *Id.*, 176 Wis. 2d at 762.

¶ 15. The circuit court determined that the alleged emotional and physical injuries for which the Kidds seek damages are too remote from Allaway's alleged negligence in running over an object in the road that turned out to be a body. The Kidds contend that the circuit court's logic is flawed. The Kidds argue:

> Allaway's negligence was close in time, place and sequence of events to the injury suffered by the Kidds. The accident occurred at 1:00 a.m. . . . . The Kidds learned of the mutilation a few hours later. More importantly, there were no intervening events or factors between Mr. Allaway's negligent mutilation and the Kidds' inability to bury Krista in the condition she was in when she died.

Given the facts of this case, the Kidds' argument takes too narrow a view and fails to adequately address the nexus between Allaway's alleged negligence and their emotional and physical injuries.

¶ 16. While the Kidds have brought a negligent mutilation claim, the damages they seek are for their own alleged long-standing and nontransitory emotional distress and the resulting physical injuries, such as throat problems, extended and significant weight loss, continuing digestive issues and nausea, sleep issues, headaches and daily fatigue. The Kidds' focus on the sequence of events after Allaway's alleged negligence ignores that the Kidds lost their teenage daughter in a terrible head-on collision during which she was killed instantly, ejected from the car, landed on the road and was hit and dragged by not one, but two, vehicles. It is the *entire* sequence of events that results in an indirect and broken chain of causation between Allaway's alleged negligence and the Kidds' alleged severe emotional distress and resulting physical injuries.

¶ 17. It is that same sequence of events which renders recovery for the Kidds' alleged emotional and physical injuries wholly disproportionate to the alleged culpability of Allaway. The Kidds seek to hold Allaway fully responsible, not only for their daughter's mutilation, but ultimately for their emotional and physical injuries. The Kidds allege that Allaway's actions were a substantial factor in causing their daughter's mutilation and that the first vehicle's impact was not. Notably, the Kidds' complaint is brought against Allaway alone; they are silent as to the extent of damage to Krista's body caused by the head-on collision which destroyed both vehicles and her subsequent ejection onto the roadway. This simply cannot

140

be discounted—both in terms of the physical injuries to Krista's body and the cause of the Kidds' emotional distress.

¶ 18. The difficulty presented by the Kidds' allocation of the mutilation of Krista's body to Allaway is borne out by their own arguments. As to Allaway's liability, the Kidds state in their brief that "just as car accidents can cause death, *it is beyond debate* that a vehicle driving over a person, alive or dead, can cause great damage to the body." (Emphasis added.) To borrow the Kidds' logic, it is beyond debate that a head-on collision resulting in the destruction of two vehicles and the ejection of a passenger onto the roadway can cause great damage to the body, and the Kidds do not allege otherwise.

■

¶ 19. It is also beyond debate that the death of their daughter in the first instance would be a cause of the alleged emotional and physical injuries. While the Kidds allege that the emotional and physical injuries associated with their inability to see their daughter can be distinguished from injuries typically expected to follow the traumatic loss of a child, they suggest no basis to do so here—where the tragic death and the harm to the body all occurred within minutes. Aside from the circuit court's conclusion that it would be too "extraordinary" that the negligence would have caused the Kidds' alleged emotional distress, any attempt to establish a causal nexus at all would be extraordinarily speculative. The indisputable speculation associated with determining the relative degree of harm to Krista's body on that night after each event, much less determining which tragic aspect caused the Kidds' emotional distress, would place an impossible burden on the alleged tortfeasor under the alleged facts of this case. As

141

to Allaway's culpability, while the Kidds point to Allaway's actions after he hit the corpse, these are not facts which go to his culpability for the alleged negligence—driving after drinking, and too fast for conditions in light of the weather and the visible accident scene. In sum, the death of the Kidds' daughter and the injury caused by the collision, ejection and impact by the first car were all wholly unrelated to Allaway's alleged negligence. To hold him fully responsible for the Kidds' emotional distress (which is not only remote but would be speculative) would be wholly out of proportion to the claimed role Allaway had in the tragic sequence of events.[3]

## CONCLUSION

¶ 20. "Liability for damages, caused by a wrong, ceases at a point dictated by public policy or common sense." *Bolte v. Joy*, 150 Wis. 2d 744, 751, 443 N.W.2d 23 (Ct. App. 1989). We conclude that both public policy and common sense dictate that the Kidds' complaint goes

---

[3] The Kidds contend that precluding their claim would eviscerate the cause of action for negligent mutilation of a corpse. However, the facts typically at issue in such cases are wholly unlike those presented here. Among other differences, claims involving mutilation of a corpse typically involve the knowing handling of a corpse, i.e., autopsies, internments, burials. *See, e.g., Scarpaci v. Milwaukee Cnty.*, 96 Wis. 2d 663, 666, 292 N.W.2d 816 (1980) (involving a claim that the defendants either intentionally or negligently performed an autopsy on their child without their permission and despite knowledge that they did not want an autopsy performed); *Koerber v. Patek*, 123 Wis. 453, 102 N.W. 40 (1905) (involving a claim that the defendant willfully, fraudulently and without authorization removed the deceased's stomach and refused to return it).

beyond that point. We affirm the circuit court's dismissal of the Kidds' complaint.

*By the Court.*—Order affirmed.