**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 5, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1281**

Cir. Ct. No. **2016CV298**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

DALE RYANT,

PLAINTIFF-APPELLANT,

V.

SUMMIT COMMERCIAL FITNESS, INC. AND GENERAL CASUALTY
COMPANY OF WISCONSIN,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for La Crosse County: TODD W. BJERKE, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Dale Ryant was injured while using exercise equipment in the fitness room in the apartment building where he was living. Ryant brought negligence and strict products liability claims in the La Crosse County Circuit Court against Summit Commercial Fitness, the company that sold the exercise equipment to the apartment building manager.[1]  Summit moved for summary judgment on both claims, and the circuit court granted the motion. Ryant appeals the court's summary judgment decisions regarding his negligence and strict liability claims.

¶2      We affirm the rulings of the circuit court.  First, Ryant's products liability claim fails because Ryant fails to adequately support his argument challenging the circuit court ruling in briefing in this court.  Second, Ryant's negligence claim fails because public policy considerations dictate that Summit should not be held liable for Ryant's injuries.

**BACKGROUND**

¶3      For purposes of summary judgment, there is no dispute regarding the following material facts.

¶4      Ryant was injured while using exercise equipment in the fitness room in the apartment building where he was living when the inclined back of a weightlifting bench fell to a horizontal position causing Ryant's injury.

---

[1] For convenience, we refer to Summit Commercial Fitness and its insurer, General Casualty Company of Wisconsin, as "Summit."

¶5     Gorman & Company, Inc., the manager of the apartment building, had purchased the bench from Summit, a seller and distributor of exercise equipment.  The bench was manufactured by Tuff Stuff Fitness International.[2]

¶6     Six years after Gorman purchased the weightlifting bench—and three years before Ryant's injury—Gorman asked Summit to service one of Gorman's treadmills in the fitness room.  In addition to servicing the treadmill, Gorman asked Summit's maintenance technician to perform an inspection of the other pieces of exercise equipment in the fitness room, including the bench at issue.  After inspecting the bench, the technician filled out a "Preventive Maintenance Checklist" for the bench on which Ryant was later injured.  The technician placed a checkmark in some of the boxes on this checklist, including those next to "Inspect Frame and Welds" and "Inspect Upholstery."  Summit's service manager testified that the technician was "supposed to" "check the boxes [on the checklist] that [the technician] did inspect."  The technician did not place a checkmark in the box on the checklist next to "Clean and Inspect Seat Adjustments," and, according to the service technician, an inspection of the seat adjustment pin of the bench "fall[s] under that category."  Ryant alleges that pin failed three years later and caused his injuries.

¶7     Summit had no further interaction with the bench in the three years between the technician's inspection and Ryant's injury.

¶8     Gorman's maintenance worker inspected the exercise equipment in the fitness room, including the bench at issue, four times per year during the

---

[2] For convenience, we refer to these parties and their respective insurers collectively as "Gorman" and "Tuff Stuff."

period between Summit's inspection and Ryant's injury. The maintenance worker testified that he would "[c]heck for rips, tears, check the pin, [and] make sure the legs aren't snapped or cracked." Regarding the inspection of the seat pin, the maintenance worker described his inspection as "basic checking" to see what "could be wrong with [the pin]."

¶9 Ryant brought this action against Gorman, Tuff Stuff, and Summit. Ryant claimed that Summit was negligent, and was a cause of his injuries, in failing to "exercise ordinary care to repair" the equipment. Ryant also claimed that Summit was strictly liable in products liability for his injuries. Summit moved for summary judgment, arguing that a public policy consideration barred Ryant's negligence claim and that the provisions of WIS. STAT. § 895.047 (2019-20)[3] barred Ryant's strict products liability claim. The circuit court granted Summit's summary judgment motion on both claims.

¶10 Other material facts will be discussed later in this opinion.

## DISCUSSION

¶11 Ryant argues that, for two reasons, the circuit court erred in granting summary judgment. First, Ryant contends that Summit is not entitled to summary judgment on his strict products liability claim because a contractual assumption exception to WIS. STAT. § 895.047 applies in these circumstances. Second, Ryant contends that the court erred in barring his negligence claim on public policy

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

grounds because "factual complexities" should be resolved at trial rather than on summary judgment. We address each argument in turn.

¶12 We begin by setting forth the governing principles regarding summary judgment and our standard of review.

### I.  Summary Judgment Principles and Standard of Review.

¶13 On a summary judgment motion, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *see Bank of N.Y. Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. This court reviews a grant or denial of summary judgment de novo using the same methodology employed by the circuit court. *Bank of N.Y. Mellon*, 381 Wis. 2d 218, ¶31.

¶14 In evaluating summary judgment materials, we view the evidence, and reasonable inferences from that evidence, in the light most favorable to the party opposing summary judgment. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980). "[I]f more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294. Whether an inference is reasonable and whether more than one reasonable inference may be drawn are questions of law. *Burbank Grease Servs., LLC v. Sokolowski*, 2005 WI App 28, ¶10, 278 Wis. 2d 698, 693 N.W.2d 89, *rev'd in part on other grounds*, 2006 WI 103, 94 Wis. 2d 274, 717 N.W.2d 781.

## II. Strict Products Liability Claim.

¶15    As noted, Ryant argues that the circuit court erred in granting summary judgment in favor of Summit on Ryant's strict products liability claim. Ryant acknowledges that sellers and distributors of products are generally relieved of liability for products liability claims under WIS. STAT. § 895.047(2).  But, Ryant argues that Summit is liable under what we will call the statutory "contractual assumption" exception, which states:

> (a) A seller or distributor of a product is not liable based on a claim of strict liability to a claimant unless the manufacturer would be liable under sub. (1)[4] and any of the following applies:
>
> 1. The claimant proves by a preponderance of the evidence that the seller or distributor has contractually assumed one of the manufacturer's duties to manufacture, design, or provide warnings or instructions with respect to the product.

Sec. 895.047(2)(a)1.    Ryant contends on appeal that Summit contractually assumed the "manufacturer's duties" referenced in § 895.047(2)(a)1. based on two separate factual assertions.  Ryant initially asserts that, through the purchase order for the equipment, "Summit agreed to take on delivery and assembly for a variety of pieces of equipment to Gorman, including the faulty weight bench at issue." Ryant also asserts that Summit's one-time inspection of the equipment three years before Ryant's injuries "involve[d] assessing the safety of the products" and thus "carrie[d] the duty to provide warnings and instructions when unsafe conditions are present."

---

[4] We need not discuss subsection (1) of WIS. STAT. § 895.047 because the parties do not make any argument about that subsection.  For purposes of this analysis, we assume without deciding that the manufacturer would be liable under subsection (1).

¶16    Summit responds that it did not assume the manufacturer's duties through the purchase order because the purchase order contains "nothing more than written warranties" and because such warranties are expressly excluded from products liability claims under WIS. STAT. § 895.047(6).[5]  Summit also argues that there is no evidence that Gorman entered into a contract with Summit to "inspect and repair" the bench on an ongoing basis.  Rather, Summit argues that its one-time maintenance and inspection visit does not establish that Summit contractually assumed any of the manufacturer's duties.

¶17    We reject Ryant's products liability claim arguments for two reasons, either of which is sufficient to affirm the ruling of the circuit court dismissing the strict liability claim.

¶18    First, Ryant provides us with no factual basis for his argument that Summit contractually assumed the manufacturer's duties either in the purchase order for the equipment or its agreement for a one-time maintenance and inspection visit.  Ryant's only citation to the record in support of this argument directs us to entire briefs filed by Ryant and Summit in the circuit court.  These briefs contain citations to numerous materials in the record, but Ryant does not specify what admissible evidence contained in these materials—or parts of these materials—he is relying on to support his argument that Summit contractually assumed duties.  Arguments in an appellant's brief must be supported by appropriate references to the record.  *See* WIS. STAT. RULE 809.19(1)(e).  "[T]his court need not sift the record for facts to support counsel's contentions."  ***Nelson***

---

[5] WISCONSIN STAT. § 895.047(6) states:  "This section does not apply to actions based on a claim of negligence or breach of warranty."

7

*by Yost v. Schreiner*, 161 Wis. 2d 798, 804, 469 N.W.2d 214 (Ct. App. 1991). Put another way, Ryant fails to direct us to evidence of a contractual assumption that would rebut Summit's prima facie case for summary judgment.[6]

¶19 Second, Ryant's reply brief does not dispute arguments in Summit's response brief regarding the products liability claim, including Summit's argument that WIS. STAT. § 895.047(6) disposes of Ryant's claim by excluding "breach of warranty" actions from products liability claims under § 895.047. We take this lack of reply as Ryant conceding that argument from Summit. *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (holding that an argument asserted by a respondent on appeal and not disputed by the appellant in the reply brief may be taken as admitted).

¶20 In sum, we reject Ryant's strict products liability argument because Ryant's brief-in-chief contains inadequate references to the record and his reply brief fails to respond to Summit's argument disposing of the products liability claim.

¶21 We next consider Ryant's negligence claim.

---

[6] The party moving for summary judgment, here, Summit, bears the burden of establishing a prima facie case for summary judgment through affidavits and other submissions. *See State v. Dunn*, 213 Wis. 2d 363, 368, 570 N.W.2d 614 (Ct. App. 1997). If Summit does so, the burden shifts to the opposing party, here, Ryant, to point to evidence showing that material facts are in dispute. *Id.* The party against whom summary judgment has been brought cannot rest upon the pleadings, but must set forth specific facts that are admissible in evidence showing that there is a genuine issue for trial. WIS. STAT. § 802.08(3); *Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999).

### III. Negligence.

¶22 We begin by setting forth governing principles regarding public policy considerations that may bar recovery on a negligence claim and our standard of review.

### A. Governing Principles and Standard of Review.

¶23 In a negligence action, notwithstanding a determination of cause-in-fact of an injury, a court may deny recovery based on public policy considerations. *Morden v. Continental AG*, 2000 WI 51, ¶60, 235 Wis. 2d 325, 611 N.W.2d 659 ("After the determination of the cause-in-fact of an injury, a court still may deny recovery after addressing public policy considerations, or legal cause."). These considerations include that:

> (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 761, 501 N.W.2d 788 (1993). The question of whether to deny recovery because of public policy considerations is a question of law that this court decides de novo. *Fandrey ex rel. Connell v. American Fam. Mut. Ins. Co.*, 2004 WI 62, ¶6, 272 Wis. 2d 46, 680 N.W.2d 345.

¶24 The only public policy consideration at issue in this appeal is whether Ryant's injury is too remote from Summit's alleged negligence. The

word "remote" as it is used in this context means "removed or separated from the negligence in time, place, or sequence of events." ***Beacon Bowl***, 176 Wis. 2d 740, 762. This court has recognized that the remoteness public policy factor revives the "intervening or superseding cause" doctrine, which had "passed away with the adoption of the substantial factor test of cause-in-fact." ***Cefalu v. Continental W. Ins. Co.***, 2005 WI App 187, ¶21, 285 Wis. 2d 766, 703 N.W.2d 743 (citing ***Fandrey***, 272 Wis. 2d 46, ¶15 n.12). A determination that the injury is too removed or separated from the alleged negligence is "essentially just a determination that a superseding cause should relieve the defendant of liability." ***Id.*** "Thus, in considering the time, place or sequence of events, we consider whether 'the chain of causation was direct and unbroken.'" ***Kidd v. Allaway***, 2011 WI App 161, ¶14, 338 Wis. 2d 129, 807 N.W.2d 700 (quoting ***Beacon Bowl***, 176 Wis. 2d at 762).

¶25 We assume for the purposes of our public policy analysis that Summit negligently inspected the bench three years before Ryant was injured and that this negligence was a cause-in-fact of Ryant's injuries. *See **Smaxwell v. Bayard***, 2004 WI 101, ¶39, 274 Wis. 2d 278, 682 N.W.2d 923 ("[E]ven if all the elements for a claim of negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors."); ***Kidd***, 338 Wis. 2d 129, ¶8 (assuming "negligence" and "cause-in-fact" for the purposes of an analysis of public policy factors). Assuming negligence and cause-in-fact in the public policy discussion allows a court to focus the analysis on whether "the cause-in-fact of the injury is legally insufficient to allow recovery." ***Fandrey***, 272 Wis. 2d 46, ¶15.

¶26 "Before determining whether public policy considerations preclude liability, it is usually a better practice to submit the case to the jury." ***Gritzner v.***

*Michael R.*, 2000 WI 68, ¶26, 235 Wis. 2d 781, 611 N.W.2d 906. "However, when the facts are not complex and the relevant public policy questions have been fully presented," a court may decide prior to a trial whether public policy precludes liability. *Id.*

### B. Ryant's Injuries Are Too Remote From Summit's Negligence.

¶27 Ryant argues that the circuit court erred in granting summary judgment because the court failed to resolve certain "factual complexities" before deciding public policy considerations. Summit responds that Ryant's injuries are too remote from Summit's one-time inspection of the equipment and gives two reasons that the chain of causation was broken. First, this piece of exercise equipment was used "countless" times during the three-year time period before Ryant's injury, and Summit contends that this inevitably caused further deterioration of the pin. Second, Gorman's maintenance worker inspected the pin multiple times after the Summit inspection and the Gorman worker should have seen and rectified any problems with the pin. For the following reasons, we conclude that the pertinent facts are not complex, the public policy questions are fully presented by the parties, and Ryant's injuries are too remote from Summit's inspection.

¶28 We first address the significance of evidence regarding use of the weight bench, and explain why we reject Summit's argument on this issue.

### *1. Use of the Bench.*

¶29 The parties make extreme assertions regarding the use of the bench during the three-year period between Summit's inspection and Ryant's injuries. Summit argues that "countless" individuals used the bench during this time and

that use broke any chain of causation that could link the Summit inspection and the event that caused injury. For this assertion, Summit refers this court solely to a transcript of its argument to the circuit court. In contrast, Ryant contends that the chain of causation was not broken by use of the weight bench because there is no evidence in the summary judgment materials to support the assertion that anyone used the bench during this entire three-year period.

¶30    We cannot accept either party's view as arising from reasonable inferences from the evidence in the summary judgment materials. Based on the evidence, we cannot infer, as Summit would have us do, that "countless" individuals used the bench over the three-year period. As noted previously, there is no evidence in the summary judgment materials to indicate a significant amount of use. Likewise, it would also be unreasonable to infer, as Ryant does, that the weight bench in this apartment building remained unused by anyone for three years after Summit's inspection until Ryant used the bench on the day of his injury.

¶31    Because, contrary to Summit's position, we cannot infer based on the summary judgment materials that the bench incurred substantial use during this three-year period, it would not be reasonable to make the further inference that the users of the bench during this time caused wear and tear on the pin of any particular amount. This inference is critical to Summit's argument. Without the inference that numerous users applied weight to the bench and moved the pin adjusting the incline of the bench, thereby causing additional strain on the pin, we cannot infer that these individuals' use of the bench severed the causal connection between Summit's negligence and Ryant's injuries. Therefore, because we cannot infer any amount of wear and tear on the pin during that three-year period, we

conclude that the use of the weight bench by some individuals does not constitute a superseding cause that relieves Summit of liability.

### 2. Maintenance Worker's Inspections.

¶32    We now consider the significance of evidence regarding the maintenance worker's multiple inspections of the bench during the three-year period between Summit's inspection and Ryant's injuries, applying the burdens that each party bears on a motion for summary judgment, as summarized above, *supra* note 6.

¶33    We conclude that Summit has established a prima facie case for summary judgment based on the maintenance worker's testimony that he conducted regular inspections.  Summit primarily relies on undisputed testimony by Gorman's maintenance worker that he performed a "basic checking" of the bench's seat pin to see what "could be wrong" with the pin on a quarterly basis during the three-year period between Summit's inspection and Ryant's injuries. From this testimony, it is reasonably inferred that the maintenance worker checked the bench's pin approximately twelve times during that period.  Further, it is reasonably inferred that the maintenance worker's inspection would have alerted him to certain defects in the pin.  Put another way, if there had been a defect—such as a cracked, broken, or missing pin—it is reasonable to infer that the maintenance worker would have noticed it during his inspections.  This evidence creates a prima facie case that the maintenance worker's failure to report or remedy such a defect superseded Summit's negligence and broke the chain of causation between Summit's negligence and Ryant's injuries.

¶34    We conclude that Ryant fails to satisfy his burden to identify evidence showing that material facts on this issue are in dispute.  Ryant's only

argument on this point is that the Gorman maintenance worker did not testify to any experience inspecting or servicing pieces of exercise equipment, and therefore his "basic checking" of the pin could not be sufficient to supersede Summit's assumed negligence involving action or inaction by its technician. However, Ryant has not identified any evidence demonstrating that a trial would be needed to resolve disputed facts about the Gorman maintenance worker's inspections. Ryant does not point to any evidence describing the alleged nature of the seat pin's defect, and Ryant does not identify any evidence that would lead us to infer that the pin's defect was of such a nature that the Gorman maintenance worker would have been unable to identify a problem with the pin. In other words, Ryant has provided no evidence that would allow us to conclude that Summit could be liable despite the Gorman maintenance worker's intervening inspections. Therefore, Ryant has failed to overcome Summit's prima facie showing.

### 3. *Burton v. American Cyanamid Co.*

¶35    Ryant also relies heavily on ***Burton v. American Cyanamid Co.***, 407 F. Supp. 3d 786 (E.D. Wis. 2019), *rev'd on other grounds and remanded sub nom, **Burton v. E.I. du Pont de Nemours & Co., Inc.***, 994 F.3d 791 (7th Cir. 2021). In that case, the plaintiffs sued paint manufacturers for injuries allegedly stemming from plaintiffs' exposure as children to lead-based paint. *Id.* at 790-91. In relevant part, the district court held that the plaintiffs' injuries were not too remote from the manufacturers' alleged negligence only because the property was owned by numerous landlords after the paint was applied. *Id.* at 793-94. The court reasoned that remoteness did not depend on the length of time between the negligence and injury—decades in that case—but instead turned on the "sequence of events" analysis and the existence of a "superseding, intervening cause." *Id.* at 794. The court held that there was no superseding cause because a "property

owner allowing paint to deteriorate enough to make chips or dust containing [lead] available to children" did not sever the chain of causation as the paint would still contain lead no matter how badly the paint was allowed to deteriorate. *Id.*

¶36 Even though the opinion in *Burton* is, at most, persuasive authority, Ryant argues that *Burton* is "precisely analogous" to this case because Summit, like the paint manufacturers, should still be liable for Ryant's injuries despite negligence on the part of intervening actors and the passage of three years. Ryant's analogy is misplaced. Unlike the alleged negligence of the landlords in *Burton*, the Gorman maintenance worker's quarterly inspections supersede Summit's alleged negligence. As explained earlier, the unrebutted reasonable inference is that the maintenance worker's inspections should have revealed any defect with the pin that Summit's technician missed during his one-time inspection.

¶37 In sum, given the uniquely simple circumstances of this case as it has been litigated and presented to us, Ryant's injuries were sufficiently "removed or separated from the negligence in time, place, or sequence of events." *Beacon Bowl*, 176 Wis. 2d 740, 762. It is stands unrebutted based on the summary judgment materials that the Gorman maintenance worker's quarterly inspections constituted a superseding cause that breaks the chain of causation between any negligence involved in Summit's inspection and Ryant's injuries. *See Kidd*, 338 Wis. 2d 129, ¶14.

## CONCLUSION

¶38 For the foregoing reasons, we affirm the order of the circuit court granting summary judgment on each cause of action.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.