COURT OF APPEALS
DECISION
DATED AND FILED

December 3, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1979**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV228

IN COURT OF APPEALS
DISTRICT III

SHAWN MCCAIGUE,

  PLAINTIFF-APPELLANT,

 V.

LAWRENCE UNIVERSITY AND REBECCA KLICH,

  DEFENDANTS-RESPONDENTS,

ABC INSURANCE COMPANY, XYZ CORPORATION,
JOHN DOE AND JANE DOE,

  DEFENDANTS.

APPEAL from an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Shawn McCaigue, pro se, appeals an order dismissing his claims against Lawrence University and its employee, Rebecca Klich.  McCaigue argues that the circuit court erred by concluding that his amended complaint failed to state a claim upon which relief could be granted.

¶2      We conclude that the circuit court properly dismissed McCaigue's claims for negligent hiring, supervision, and training; intentional infliction of emotional distress; and abuse of process.  We conclude, however, that the facts alleged in McCaigue's amended complaint are sufficient to state a claim for malicious prosecution.  We therefore affirm the court's decision in part but reverse in part and remand for further proceedings on the malicious prosecution claim.

## BACKGROUND

¶3      The following facts are taken from McCaigue's amended complaint and are assumed to be true for purposes of this appeal.  *See **Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. McCaigue and his mother, Kathy McCaigue,[1] were in a severe car accident in front of the Lawrence University Chapel.  Rebecca Klich, a safety officer employed by Lawrence, "then came on the scene and … proceeded to instigate a major incident by trying to severely hurt Kathy and blame [McCaigue] for it."

---

[1] For the remainder of this opinion, we refer to Shawn McCaigue as "McCaigue" and to his mother as "Kathy."

¶4      More specifically, Klich told Kathy to get out of the car, and as Kathy was walking by her, Klich "grabbed Kathy by the arm and tried to yank Kathy down backwards." "Kathy had to spin around to keep from falling," which exacerbated the traumatic brain injury that she had sustained in the accident. Klich then "tried to get the keys away from [McCaigue]," "told 911 that [McCaigue] was agitated and extremely confused," and falsely stated that McCaigue "grabbed her face and broke her glasses."

¶5      Klich's statements "wound up" Sergeant Brandon Edwards, who later arrived on the scene, "and the end result was that … Edwards punched [McCaigue] in the head violently twice instead of getting him medical care," which made McCaigue's brain injury, which was also sustained in the accident, worse. McCaigue was subsequently transported to the hospital by ambulance. At the hospital, Sergeant Carrie Peters told an emergency room physician that McCaigue "clearly" did not have a head injury "because [Peters] was trying to cover up" Edwards' conduct. Because of Peters' statement that McCaigue did not have a head injury, hospital staff failed to properly examine McCaigue and "falsified" his medical records "to take away evidence of his traumatic brain injury."

¶6      As a result of Klich's actions, McCaigue was "charged with a felony and put in chapter 51."[2] He was also charged with a misdemeanor for criminal damage to property, but the charges against him were later dropped. Nevertheless,

---

[2] *See* WIS. STAT. §§ 51.15, 51.20 (2021-22) (governing emergency detention and involuntary commitment of mentally ill individuals). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

due to the criminal charges, McCaigue "had to hire a criminal defense lawyer and come to Appleton by bus and get a hotel room [five] times."

¶7      McCaigue's amended complaint further alleged that Klich acted with malice by making false or misleading statements to law enforcement. In particular, the amended complaint alleged that Klich's actions were malicious because she injured Kathy but then lied to the police to try to deflect the blame for Kathy's injuries onto McCaigue.

¶8      Based on these allegations, McCaigue's amended complaint asserted a claim against Lawrence for negligent hiring, supervision, and training. The amended complaint also asserted claims against Klich and Lawrence for intentional infliction of emotional distress, malicious prosecution, and abuse of process.[3]

¶9      Lawrence moved to dismiss, arguing that McCaigue's complaint failed to state a claim upon which relief could be granted.[4] Following briefing by the parties and a nonevidentiary hearing, the circuit court granted Lawrence's motion.

---

[3] With respect to these claims, the amended complaint alleged that Lawrence was vicariously liable for Klich's actions under the doctrine of respondeat superior.

[4] McCaigue filed his original summons and complaint on March 8, 2023, naming only Lawrence as a defendant, not Klich. Lawrence filed its motion to dismiss on August 16, 2023, asserting that McCaigue's original complaint failed to state a claim upon which relief could be granted. McCaigue filed his amended complaint approximately two weeks later, on September 1, 2023. *See* WIS. STAT. § 802.09(1) (stating that "[a] party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed"). Thus, the amended complaint became the operative pleading for purposes of Lawrence's motion to dismiss. The amended complaint added Klich as a defendant. Lawrence and Klich are represented by the same attorney on appeal and filed a joint response brief.

¶10     In its oral ruling, the circuit court began by concluding that to the extent McCaigue was attempting to recover for injuries sustained by Kathy, he had no standing to do so.[5]

¶11     Next, the circuit court addressed McCaigue's allegations that Klich

> injured your mother in order to frame you for injuries and to present you as someone who is out of control, resulting in responding officers striking you and throwing you to the ground, hospital staff believing you were undergoing a mental health crisis, and social service personnel believing that you needed to be civilly committed under a [WIS. STAT. ch.] 51 commitment.

The court reasoned that all of those allegations "involve the actions of third parties that are removed and separate from the actions or the inactions of Ms. Klich." Accordingly, the court concluded that there was "no connection … involving causation between any of the conduct or misconduct or inappropriate conduct done by" Klich and the actions of "law enforcement, doctors, or social services." The court further concluded that there were "intervening causes that separate any wrongdoing by Ms. Klich from [McCaigue's] alleged injuries." The court also stated that "it would be really unreasonable and without common sense, and really without a stopping point, if we were to allow a claim like this to be brought against either Ms. Klich or Lawrence University."

¶12     The circuit court next addressed McCaigue's claim for malicious prosecution, stating that McCaigue had not "stated the elements … that you need to state in order to have that claim survive." In response, McCaigue asserted that

---

[5] On appeal, McCaigue asserts that he is not "pursuing loss claimed by" Kathy. (Formatting altered.)

Klich had lied to the police by failing to tell them that she tried to hurt Kathy and by lying about McCaigue breaking her glasses. The court replied that Klich's alleged failure to tell the police that she had tried to hurt Kathy was not a lie. The court then stated that the malicious prosecution claim failed because Klich was "not the prosecutor. She didn't prosecute you. She did her role in responding to an accident, and then law enforcement and the District Attorney's Office took it from there."

¶13 Finally, the circuit court concluded that McCaigue's abuse of process claim failed because the amended complaint did not allege that Klich "used some formal process and abused it to [McCaigue's] detriment." Again, the court emphasized that "what [Klich] did was separated from what the professionals did—social services, the medical people in terms of your [WIS. STAT. ch.] 51 commitment—and it was different than what law enforcement did in terms of your being charged with battery to a law enforcement officer."

¶14 The circuit court subsequently entered a written order dismissing all of McCaigue's claims. McCaigue now appeals.

## DISCUSSION

¶15 "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Data Key Partners*, 356 Wis. 2d 665, ¶19 (citation omitted). To survive a motion to dismiss, a complaint must plead facts that, if true, would entitle the plaintiff to relief. *Id.*, ¶21. "[T]he sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled. Plaintiffs must allege facts that plausibly suggest they are entitled to relief." *Id.*, ¶31.

¶16 Whether a complaint states a claim upon which relief can be granted is a question of law that we review independently. *Id.*, ¶17. When reviewing a circuit court's decision on a motion to dismiss for failure to state a claim, we must "accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom."[6] *Id.*, ¶19. Furthermore, we "must construe the facts set forth in the complaint and all reasonable inferences that may be drawn from those facts in favor of stating a claim." *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 923-24, 471 N.W.2d 179 (1991). However, we may not add facts in the process of construing a complaint, and we will not accept as true any legal conclusions asserted therein. *Data Key Partners*, 356 Wis. 2d 665, ¶19.

## I. Claims for negligent hiring, supervision, and training and intentional infliction of emotional distress

¶17 To state a claim for negligent hiring, supervision, and training against an employer based on the wrongful conduct of its employee, a plaintiff

---

[6] McCaigue asserts that the circuit court was biased against him because it refused to accept as true his allegation that Klich lied to the police. The court reasoned that Klich's alleged failure to tell the police that she had tried to hurt Kathy was not a lie. The court did not address McCaigue's additional allegation that Klich lied by telling the police that McCaigue broke her glasses. As noted above, however, our review of the circuit court's decision on a motion to dismiss is de novo. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. On our de novo review, we accept as true McCaigue's allegation that Klich lied to the police about McCaigue breaking her glasses.

Although McCaigue asserts that the circuit court was biased against him and cites several cases pertaining to judicial bias, he does not present a developed argument for reversal based on the court's alleged bias. He does not, for instance, discuss the legal standards for a judicial bias claim or apply those standards to the specific facts of this case. *See, e.g.*, *State v. Goodson*, 2009 WI App 107, ¶¶8-9, 320 Wis. 2d 166, 771 N.W.2d 385 (discussing the legal standards for a judicial bias claim). Under these circumstances, to the extent McCaigue intended to assert a standalone claim for judicial bias as a separate basis for reversal of the circuit court's decision, we deem his argument undeveloped and decline to address it further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).

must allege facts showing "that the employer has a duty of care, that the employer breached that duty, that the act or omission of the employee was a cause-in-fact of the plaintiff's injury, and that the act or omission of the employer was a cause-in-fact of the wrongful act of the employee." ***Doe v. Archdiocese of Milwaukee***, 2005 WI 123, ¶43, 284 Wis. 2d 307, 700 N.W.2d 180 (citation omitted).

¶18    To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing: "(1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." ***Rabideau v. City of Racine***, 2001 WI 57, ¶33, 243 Wis. 2d 486, 627 N.W.2d 795.

¶19    Thus, both negligent hiring claims and intentional infliction of emotional distress claims require the plaintiff to establish causation in fact.  If the plaintiff makes that showing, however, a court then considers "whether the conduct of the defendant was a 'proximate cause' of the harm sustained by the plaintiff." ***Morden v. Continental AG***, 2000 WI 51, ¶60, 235 Wis. 2d 325, 611 N.W.2d 659.  "Proximate cause involves public policy considerations for the court that may preclude the imposition of liability." ***Id.***  "After the determination of the cause-in-fact of an injury, a court still may deny recovery after addressing policy considerations, or legal cause." ***Id.***  "Thus, when a court precludes liability based on public policy factors, it is essentially concluding that despite the existence of cause-in-fact, the cause of the plaintiff's injuries is not legally sufficient to allow recovery." ***Fandrey ex rel. Connell v. American Fam. Mut. Ins. Co.***, 2004 WI 62, ¶13, 272 Wis. 2d 46, 680 N.W.2d 345.

8

¶20 In many cases, it is preferable "to allow the jury to answer the questions of negligence and cause-in-fact before a court addresses the public policy concerns associated with legal causation." *Kleinke v. Farmers Co-op. Supply & Shipping*, 202 Wis. 2d 138, 144, 549 N.W.2d 714 (1996). "However, when the pleadings clearly present a question of public policy and the factual issues are simple and clear," the circuit court may "make a determination regarding legal causation at the pleadings stage." *Id.*; *see also Sanem v. Home Ins. Co.*, 119 Wis. 2d 530, 538, 350 N.W.2d 89 (1984) (stating that proximate cause "involves public policy considerations and is a question of law solely for judicial determination").

¶21 Here, the circuit court concluded that public policy barred McCaigue's claims for negligent hiring, supervision, and training and intentional infliction of emotional distress because McCaigue's claimed injuries were "too remote" from Klich's alleged conduct. *See Sanem*, 119 Wis. 2d at 539. We agree with that conclusion.

¶22 In a public policy analysis, "[t]he remoteness factor revives the intervening or superseding cause doctrine, which had passed away with the adoption of the substantial factor test of cause-in-fact." *Cefalu v. Continental W. Ins. Co.*, 2005 WI App 187, ¶21, 285 Wis. 2d 766, 703 N.W.2d 743. A conclusion that the defendant's conduct is too remote from the plaintiff's injury "is essentially just a determination that a superseding cause should relieve the defendant of liability." *Id.* In assessing remoteness and the existence of a superseding cause, we consider "the time, place or sequence of events" and whether "the chain of causation was direct and unbroken." *Kidd v. Allaway*, 2011 WI App 161, ¶14, 338 Wis. 2d 129, 807 N.W.2d 700 (citation omitted).

9

¶23    McCaigue's amended complaint alleges that Klich made false or misleading statements to the police about McCaigue's conduct, which caused Sergeant Edwards to punch McCaigue twice, which in turn caused Sergeant Peters to lie to hospital staff in order to cover up Edwards' conduct, which then caused hospital staff to fail to properly examine McCaigue and to falsify his medical records, all of which caused McCaigue physical injury and emotional distress. Under these circumstances, the "chain of causation" between Klich's conduct and McCaigue's alleged injuries was not "direct and unbroken." *See id.* Instead, accepting the allegations in McCaigue's amended complaint as true, after Klich made her report to law enforcement, Edwards exercised his discretion in making a decision to punch McCaigue, Peters exercised her discretion in deciding to lie to hospital staff, and hospital staff exercised their discretion in deciding whether to examine McCaigue and what information to include in his medical records.

¶24    Thus, at multiple points following Klich's alleged conduct, third parties exercised their own judgment and discretion in taking actions that ultimately led to McCaigue's claimed injuries. We agree with the circuit court that, as a matter of law, even accepting the facts alleged in McCaigue's amended complaint as true, Klich's conduct was simply too remote from McCaigue's alleged injuries to permit recovery. For that reason, we affirm the court's dismissal of McCaigue's claims for negligent hiring, supervision, and training and intentional infliction of emotional distress.

## II. Abuse of process

¶25    "An abuse of process occurs when a person uses a legal process against another primarily to accomplish a purpose for which it is not designed." WIS JI—CIVIL 2620 (2013). To prevail on an abuse of process claim, a plaintiff

must prove that: (1) the defendant had a purpose other than that which the process was designed to accomplish; and (2) the defendant misused the process to accomplish a purpose other than that it was designed to accomplish. *Id.*

¶26 McCaigue's amended complaint alleges that Klich made false or misleading statements about him to law enforcement, which ultimately resulted in criminal charges being filed against him. The amended complaint does not allege, however, that *Klich* used any "legal process" against McCaigue. McCaigue cites no legal authority in support of the proposition that an individual may be liable for abuse of process based solely on statements that he or she made to law enforcement about another person. Stated differently, McCaigue cites no legal authority showing that providing information to law enforcement about a person is tantamount to using a "legal process" against that person for purposes of an abuse of process claim. Consequently, McCaigue's amended complaint failed to state a claim for abuse of process, and the circuit court properly dismissed that claim.

## III. Malicious prosecution

¶27 A claim for malicious prosecution requires proof of six elements: (1) a prior institution or continuation of some regular judicial proceedings against the plaintiff in the action for malicious prosecution; (2) the former proceedings were by, or at the instance of, the defendant in the action for malicious prosecution; (3) the former proceedings terminated in favor of the plaintiff in the action for malicious prosecution; (4) the defendant acted with malice in instituting the former proceedings; (5) there was a "want of probable cause for the institution of the former proceedings"; and (6) the former proceedings caused the plaintiff in the malicious prosecution action injury or damage. *Pollock v. Vilter Mfg. Corp.*, 23 Wis. 2d 29, 37, 126 N.W.2d 602

11

(1964); *see also* WIS JI—CIVIL 2600 (2022). After examining the allegations in McCaigue's amended complaint, and construing those allegations and the reasonable inferences therefrom in favor of McCaigue, *see* **Northridge**, 162 Wis. 2d at 923-24, we conclude that the amended complaint adequately states a claim for malicious prosecution.

¶28 As to the first element of a malicious prosecution claim, the amended complaint alleges that regular judicial proceedings were instituted against McCaigue. *See* **Pollock**, 23 Wis. 2d at 37. Namely, the amended complaint alleges that McCaigue was charged with a felony and with a misdemeanor for "criminal damage to property."

¶29 With respect to the second element of a malicious prosecution claim, the amended complaint alleges that the criminal charges against McCaigue were filed because of Klich's actions—specifically, because Klich made false or misleading statements to law enforcement about McCaigue's conduct. These allegations are sufficient to satisfy the requirement that the criminal proceedings were "at the instance of" Klich, *see* **Pollock**, 23 Wis. 2d at 37, as they show that Klich was "actively involved in" instituting the criminal proceedings against McCaigue, *see* WIS JI—CIVIL 2600 (2022) (characterizing the second element of a malicious prosecution claim as requiring that the defendant "was actively involved in" instituting criminal proceedings against the plaintiff).

¶30 The circuit court concluded that McCaigue had failed to allege facts satisfying the second element of a malicious prosecution claim because Klich was "not the prosecutor" and "didn't prosecute [McCaigue]." A malicious prosecution claim, however, is not limited to individuals who actually filed charges against or prosecuted the plaintiff. To the contrary, our supreme court has recognized that a

private citizen who makes a report to law enforcement that results in criminal charges being filed may be liable for malicious prosecution. *See **Pollock***, 23 Wis. 2d at 36-37.

¶31    In ***Pollock***, after conducting an internal investigation, Vilter Manufacturing Corporation suspected that Pollock had engaged in criminal conduct and reported its suspicions to a United States attorney and the FBI. ***Id.*** at 31-34. The FBI agent then "conducted an independent investigation of Pollock's activities" and determined that there was probable cause to believe Pollock had violated a federal statute. ***Id.*** at 34-35. The FBI agent "verified under oath a complaint for the arrest of Pollock," and an arrest warrant was issued. ***Id.*** at 35. A grand jury subsequently indicted Pollock, but he was ultimately acquitted. ***Id.***

¶32    Pollock then sued Vilter for malicious prosecution. ***Id.*** The circuit court granted summary judgment in favor of Vilter, and Pollock appealed. ***Id.*** at 36. On appeal, one of the issues was whether the federal prosecution of Pollock was commenced "at the instance of Vilter." ***Id.***

¶33    Addressing that issue, our supreme court noted that the elements of a malicious prosecution claim "seek to limit its application to those instances in which the defendant, *as a private citizen*, has taken affirmative, decisive steps to subject another person to the rigors of a lawsuit, without knowing that his [or her] claim is well grounded." ***Id.*** at 36 (emphasis added). Addressing the specific facts before it, the court then explained:

> The mere fact that a person other than a member of Vilter management signed the complaint in support of the arrest warrant does not in and of itself preclude liability for Vilter. We note that it is common practice in the federal criminal system, and in the state system as well, for a police officer to be the complaining witness …. In the state system, an officer may simply allege his [or her] conclusion

> of probable cause based upon information and belief. *Therefore, if an officer accepted groundless allegations made by a private party and signed a complaint supporting the warrant alleging information and belief as the basis of his [or her] conclusion, and if the magistrate, accepting the sufficiency of the allegations, issued a warrant, the plaintiff would be damaged as a result of defendant's initial false or inaccurate statements. That an officer signed the original complaint does not alter defendant's liability under these circumstances.*

*Id.* at 39-40 (emphasis added; footnote omitted). Thus, under ***Pollock***, it is clear that a private citizen who makes a report to law enforcement about another individual's criminal activity may subsequently be liable for malicious prosecution, even though that citizen did not personally file charges against or prosecute the other individual.

¶34 Notably, despite recognizing that a private citizen may be liable for malicious prosecution, the ***Pollock*** court ultimately concluded that Vilter's conduct "did not, as a matter of law, initiate the criminal prosecution of Pollock." *Id.* at 40. The court reasoned that the evidence showed that the FBI agent who signed the complaint against Pollock "did not base his decision to sign the complaint solely upon the information provided by Vilter. Rather, he conducted his own independent investigation for a period of two months, counseling both with other FBI agents and with the United States attorney, before seeking the arrest warrant." *Id.* Here, in contrast, there are no allegations in McCaigue's amended complaint showing that any law enforcement officer or prosecutor conducted an independent investigation before filing criminal charges against

McCaigue. As such, unlike the ***Pollock*** court, we cannot conclude as a matter of law that Klich's conduct did not initiate McCaigue's criminal prosecution.[7]

¶35 Turning to the third element of a malicious prosecution claim—i.e., whether the former proceedings terminated in favor of McCaigue, *see **id.*** at 37—the amended complaint alleges that the criminal charges against McCaigue were "dropped." This allegation gives rise to a reasonable inference that the criminal proceedings terminated in McCaigue's favor. *See* RESTATEMENT (SECOND) OF TORTS § 659 (AM. L. INST. 1977) (stating that "the formal abandonment of the proceedings by the public prosecutor" constitutes a termination in favor of the accused).

¶36 The fourth element of a malicious prosecution claim requires a showing that the defendant acted with malice in instituting the former proceedings. *See **Pollock***, 23 Wis. 2d at 37. Malice may be established by showing either "malice in fact" or "malice at law." ***Meyer v. Ewald***, 66 Wis. 2d 168, 175, 224 N.W.2d 419 (1974).

---

[7] In their appellate brief, Lawrence and Klich argue that the proximate cause analysis discussed above also applies to McCaigue's malicious prosecution claim. Although their argument is not well-developed as it relates to the malicious prosecution claim, we understand Lawrence and Klich to argue that after a private individual reports allegedly criminal conduct to law enforcement, the actions of law enforcement officers and/or prosecutors in deciding to issue charges against the alleged wrongdoer are intervening or superseding causes that prevent a malicious prosecution claim against the citizen reporter.

This argument is directly contrary to our supreme court's decision in ***Pollock v. Vilter Manufacturing Corp.***, 23 Wis. 2d 29, 36-37, 39-40, 126 N.W.2d 602 (1964), where the court recognized that a private citizen who makes a report to law enforcement that results in criminal charges being filed may be liable for malicious prosecution, unless the evidence shows that the criminal charges were issued following an independent investigation by law enforcement or the prosecutor. As noted above, there are no allegations in McCaigue's amended complaint showing that any law enforcement officer or prosecutor conducted an independent investigation before filing criminal charges against McCaigue.

¶37    Malice in fact exists when the defendant "acted chiefly from motives of ill will" in instituting criminal proceedings against the plaintiff. *Id.* (citation omitted). A defendant's "willful and wanton disregard for the fact[s] may be basis for malice," but "such wanton and willful conduct must be of such a nature and character as to evince a hostile or vindictive motive." *Id.* (citation omitted).

¶38    Malice at law exists when the defendant's "primary purpose was something other than the social one of bringing an offender to justice." *Id.* (citation omitted). For instance, malice at law exists when a prosecution is commenced "for the purpose of collecting a debt or compelling the delivery of property, or to accomplish some other ulterior and unlawful purpose." *Id.* at 177.

¶39    Here, the amended complaint alleges that Klich tried to injure Kathy and then lied to law enforcement to cover up her own role in the incident and to place blame on McCaigue instead. These allegations, if true, would be sufficient to establish malice at law—namely, that Klich acted with the primary purpose of avoiding blame for her own unlawful conduct, rather than for the social purpose of bringing an offender to justice. *See id.* at 175.

¶40    The allegations in McCaigue's amended complaint are also adequate to satisfy the fifth element of a malicious prosecution claim—i.e., that there was a "want of probable cause for the institution of the former proceedings." *See Pollock*, 23 Wis. 2d at 37. In this context, "probable cause" refers to "the quantum of evidence that would lead an ordinary and reasonable layman in the circumstances[] to believe that the plaintiff committed a crime." *Id.* at 41-42. The amended complaint alleges that Klich made false or misleading statements to law enforcement, which resulted in McCaigue being charged with crimes. If we accept as true the allegation that Klich lied to the police about McCaigue's

16

conduct—and, specifically, lied about McCaigue breaking her glasses—then Klich would not have had "the quantum of evidence that would lead an ordinary and reasonable layman" in her position "to believe that [McCaigue] committed a crime." *See id.*

¶41    Finally, the sixth element of a malicious prosecution claim requires proof that the former proceedings caused the plaintiff in the malicious prosecution action injury or damage. *Id.* at 37.  McCaigue's complaint alleges that because of the criminal charges against him, he "had to hire a criminal defense lawyer and come to Appleton by bus and get a hotel room [five] times."  These allegations are sufficient to satisfy the sixth element of a malicious prosecution claim premised on the institution of criminal proceedings.[8]

¶42    For these reasons, we conclude that the allegations in McCaigue's amended complaint are sufficient to state a claim for malicious prosecution.  We

---

[8] "For malicious prosecution suits involving prior civil proceedings, Wisconsin adheres to the minority 'English' rule that the plaintiff must plead and prove special damages," which are defined as "injuries in the nature of an interference with the person or property of the present plaintiff by the prior action."  WIS JI—CIVIL 2605 (2022); *see also* ***Johnson v. Calado***, 159 Wis. 2d 446, 448-49, 464 N.W.2d 647 (1991).  "An allegation that the present plaintiff incurred expenses in defending himself [or herself] against the prior proceeding fails to allege special damages."  WIS JI—CIVIL 2605 (2022).

We are aware of no authority—and Lawrence and Klich cite none—in support of the proposition that this "special damages" requirement also applies to a malicious prosecution claim that is premised on the institution of prior *criminal* proceedings.  *See, e.g.*, WIS JI—CIVIL 2600 (2022) (listing the elements of a claim for malicious prosecution premised on the institution of prior criminal proceedings, without discussing any "special damages" requirement).  In addition, we note that this court has previously held—in an unpublished opinion authored by a single judge—that a plaintiff's allegation that he "was injured by incurring expenses in defending himself in [a] criminal case" satisfied the sixth element of a malicious prosecution claim premised on the institution of criminal proceedings.  *See* ***Hambly v. Lewis***, No. 2012AP710, unpublished slip op. ¶¶6-7 (WI App Aug. 15, 2012); *see also* WIS. STAT. RULE 809.23(3)(b) (stating that an unpublished opinion authored by a single judge and issued on or after July 1, 2009, may be cited for its persuasive value).

therefore reverse that portion of the circuit court's order dismissing the malicious prosecution claim and remand for further proceedings on that claim.

¶43     No costs to either party.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)5.